**Harold Wayne ENLOW, et al.,**
**Plaintiffs–Appellees,**

v.

**TISHOMINGO COUNTY, MISSISSIPPI,**
**et al., Defendants,**

**Jim Wall, in his individual capacity,**
**Defendant–Appellant.**

No. 91–1003.

United States Court of Appeals,
Fifth Circuit.

June 8, 1992.

Rehearing and Rehearing En Banc
Denied Aug. 6, 1992.

502

Dalton McBee, Jr., T. Hunt Cole, Jr., Sp. Asst. Attys. Gen., Mike Moore, Atty. Gen., Jackson, Miss., for defendant-appellant.

Jim Waide, Tupelo, Miss., for plaintiffs-appellees.

Before WILLIAMS, DUHÉ, and EMILIO M. GARZA, Circuit Judges.

JERRE S. WILLIAMS, Circuit Judge:

Harold Wayne Enlow, Angela Deaton, and Harold's Enterprises, Inc.,[1] filed this suit under 42 U.S.C. § 1983 against Tishomingo County, Mississippi, Sheriff Richard Dobbs, sheriff of Tishomingo County, and Officer Jim Wall, a Mississippi Highway Patrol investigator, employed by the Mississippi Department of Public Safety. The suit alleges violations of the First, Fourth, Fifth, and Fourteenth Amendments, as well as state tort claims of malicious prosecution and abuse of process. As the focus of this interlocutory appeal by Officer Jim Wall, Enlow alleges that Wall had arrested him in violation of his First and Fourth Amendment rights. Enlow together with Deaton assert that Wall had violated their First Amendment rights through Wall's grand jury testimony. Finally, Enlow and Deaton claim that Wall was liable for malicious prosecution and abuse of process concerning the grand jury testimony. The district court denied Wall's motion for summary judgment based upon qualified or absolute immunity, finding that material fact questions remained as to those issues. We affirm the district court's decision.

## I. FACTS AND PRIOR PROCEEDINGS

In September 1988, appellee Enlow, who had owned and operated a skating rink in Iuka, Mississippi, for nine years, agreed to lease his premises to Lincoln Employment Training Service ("LETS"). Enlow was advised by LETS that his rink would be used for bingo games and that the profits would benefit a non-profit entity.[2] After distributing flyers, advertising the game, and inviting the general public, LETS prepared to open the rink to bingo on September 25, 1988.

Tishomingo County law enforcement officials received information that an illegal gambling operation run by LETS would soon operate from Enlow's rink. Pursuant to the information, the officials sought to investigate the entire operation and assigned Wall and other officers to work with Sheriff Dobbs in an undercover investigation of the rink. At the rink, the officers found a congested area with a large crowd, approximately 700–1000 people, and various illegal games, such as "Pull-tab" and bingo, in progress. They concluded that the operation was illegal gambling. The Sheriff decided to raid the premises and close down the operation. Sheriff Dobbs, Wall, and about a dozen other officers returned to the premises, and, without displaying any search or arrest warrants, declared a raid in progress.[3]

On the day of the raid (also the first day of the bingo operation), Enlow maintains that he was present on the premises merely to assist in parking, while Deaton, his daughter, was there preparing to operate a concessions stand.[4] Both parties admit that when the law enforcement officials

---

1. A corporation owned by Enlow, Deaton, and Enlow's wife which owned a leasehold interest in the skating rink in Iuka, Mississippi.

2. Enlow asserts that his limited interest in the enterprise was the monetary profits from the lease of the building. Further, the record shows that to insure that LETS was going to engage in a lawful enterprise, Enlow contacted the Secretary of State who informed him that LETS was a corporation in good standing.

3. The timing of the declaration of the raid is highly contested. These factual disputes remain to be addressed at trial.

4. The uncontroverted record indicates that Deaton, at Enlow's request, had called the Sheriff's office about a week prior to the raid to inquire whether off-duty deputies could help direct traffic and provide security for the parking lot beginning on September 25. The Sheriff responded that his department did not provide such services.

arrived, Enlow was outside the building helping direct traffic. At this juncture, however, the parties' versions of the facts differ significantly.

Wall contends that after the officers had entered the building, Enlow approached the Sheriff and asked what was occurring. The Sheriff responded that the place was being raided, the officers having determined that an illegal gambling operation existed on the premises. While standing next to his son-in-law, Enlow allegedly told the Sheriff that he could not carry out the raid because the building belonged to Enlow. The Sheriff replied: "Mr. Enlow, if you would, just don't interfere, just be nice and stand right here." Although Enlow's son-in-law put his arm around him and told him not to interfere, Enlow began "hollering": "You can't take a dime of this money and you will not leave this building with that money. It is not your money. It belongs to these people." Wall then contends that Enlow's actions provided the impetus for the unruly behavior by the crowd.[5] Just as Enlow had "hollered" at the Sheriff, the crowd began to "holler"— "Give us our money." Then suddenly, according to Wall, Enlow started taking pictures in close proximity to the Sheriff's face, rendering him temporarily blind. Because Enlow took the pictures and excited the crowd, Sheriff directed Wall to place Enlow under arrest.[6]

In contrast, the crux of Enlow's account is that since he had contacted the Secretary of State, and believed the operation to be legal, he regarded the raid of the premises and the Sheriff's arrests of the lessees as unlawful. To this end, he made two inquiries: whether Sheriff had a search warrant and whether he had an arrest warrant. As to the first inquiry, the Sheriff informed him that he did not need to have a search warrant. As to the second inquiry, the Sheriff replied: "[I]f you don't shut your mouth ... and get out of the damn way, I'll put you under arrest for interference with a raid." Enlow asserts that after such an encounter, he remained silent; he did not want to be arrested. He does acknowledge, however, that he did borrow a camera from a bystander and did take a picture of the raid in progress. As soon as he took the picture, Sheriff Dobbs arrested him for interference with a raid.[7]

Enlow was taken into custody and was required to post a two percent bond fee. On February 6, 1989, the Justice Court *nol-prossed* the interference charge against Enlow. Appellees then brought this section 1983 action in federal court. At the time, no criminal charges were pending against Enlow or Deaton.

Pursuant to grand jury testimony by Wall on April 6, 1989, the Tishomingo County Grand Jury indicted both Enlow and Deaton on criminal charges. The record indicates that Wall was the only witness who testified to the grand jury. In a trial before the Circuit Court of Tishomingo County, the jury (1) could not come to an agreement as to whether Enlow permitted a game prohibited by law to be carried

---

**5.** Sheriff Dobbs' deposition states: "Through Mr. Enlow's opposing the seizure, the crowd had got unruly and had jumped up and had crowded around myself and the other people around the table."

**6.** Enlow was charged with violating Section 97–33–19 of the Mississippi Code. The statute provides in connection with gambling raids:

> Any person or persons who shall oppose the seizure of any such moneys or appliances by any officer or person so authorized to make it, shall, on conviction thereof, be liable to a penalty of fifteen hundred dollars; and any person who shall take any part of said money after the said seizure shall be declared, shall be guilty of a misdemeanor, and on convic-

tion thereof, shall be fined and imprisoned, at the discretion of the court.
Miss.Code Ann. § 97–33–19 (1972).

**7.** Enlow's deposition describes the arrest as follows:

> [The Sheriff] shook his finger in my face and said I told you, damn it, to stay out of this, you're under arrest for interfering with a raid.... Jim Wall grabbed my hands, throwed them behind my back, throwed the handcuffs on me, caught me in the back of the collar with his left hand and his right hand shoved my arms up behind my back and shoved me down nearly on my knees and swung me around nearly knocking a woman down.

on in his building in violation of Section 97–33–13 of the Mississippi Code,[8] creating a mistrial as to that charge; (2) found Enlow not guilty of vigorously and forcefully opposing the seizure of monies in violation of Section 97–33–19; and (3) found Deaton not guilty of willfully and unlawfully operating and exhibiting gambling tables. Finally, the court directed a verdict of not guilty on the charge that Deaton and Enlow publicly put up a lottery in violation of Section 97–33–31,[9] and the charge that Enlow was operating and exhibiting gambling tables.

In this appeal of the federal case before us, filed before the criminal prosecution, only claims against Wall are involved. Prior to any discovery, Wall filed his first motion for summary judgment, asserting that qualified immunity barred the claims against him arising out of Enlow's arrest on September 25, 1988. The district court subsequently denied Wall's first summary judgment motion, noting the existence of genuine issues of material fact.[10] After considerable discovery as well as the filing of several amended complaints, including a fourth amended complaint in which a new theory of recovery was asserted against Wall for retaliation claims growing out of his grand jury testimony, Wall again moved for summary judgment on qualified and absolute immunity grounds. Appellees then filed a cross-motion for summary

judgment on various grounds not at issue on this appeal.

The district court first found that whether Wall acted as a reasonable officer with a reasonable understanding of Enlow's constitutional rights, under both the First and Fourteenth Amendments, depended on the actual occurrences on the night of the raid. Thus, although the court rejected Enlow's argument that Section 97–33–19 of the Mississippi Code was facially invalid as violative of First Amendment rights, it reserved ruling on the constitutionality of the statute as it applied to the arrest of Enlow until further fact finding occurred. According to the court, fact questions exist as to whether Wall may have infringed Enlow's First Amendment rights in applying the statute because there was no clear or present danger or incitement to riot on the night of the bingo raid.[11] Conflicting testimony as to the size of the crowd and the nature of Enlow's comments to Sheriff Dobbs created a factual question—whether Enlow's arrest, allegedly for his speech only, was privileged under the First Amendment. The court properly denied the motion for summary judgment on the First Amendment claim.

The court also denied Wall's summary judgment motion based upon immunity from alleged Fourth Amendment viola-

---

**8.** The statute provides:
> Any owner, lessee, or occupant of any outhouse or other building, who shall knowingly permit or suffer any of the before mentioned tables, banks, or games, or any other game prohibited by law, to be carried on, kept, or exhibited in his said house or other building, or on his lot or premises, being thereof convicted, shall be fined not less than one hundred dollars nor more than two thousand dollars.

Miss.Code Ann. § 97–33–13 (1972).

**9.** The statute provides:
> If any person, in order to raise money for himself or another, or for any purpose whatever, shall publicly or privately put up a lottery to be drawn or adventured for, he shall, on conviction, be imprisoned in the penitentiary not exceeding five years.

Miss.Code Ann. § 97–33–31 (1972).

**10.** The Supreme Court has emphasized that qualified immunity questions merit resolution

at the earliest possible stage of litigation. *Anderson v. Creighton,* 483 U.S. 635, 646–47 n. 6, 107 S.Ct. 3034, 3042–43 n. 6, 97 L.Ed.2d 523 (1983). Thus, generally, questions regarding qualified immunity are resolved on the face of the pleadings and with limited, if any, resort to pre-trial discovery. *See, e.g., Geter v. Fortenberry,* 849 F.2d 1550, 1553–54 (5th Cir.1988).

**11.** Wall asserted that Enlow had not shown that a reasonable officer would have known that obeying Sheriff Dobbs' order to arrest Enlow was a violation of Enlow's clearly established constitutional rights. The court reasoned that the established right at issue constituted the right to be free from an arrest for speech alone. The court further found that because factual issues remained as to "what truly took place that night," it could not decide whether "Wall acted as a reasonable officer with a reasonable understanding of Enlow's [F]irst [A]mendment rights."

tions. Wall appeals this denial.[12] The district court determined that Enlow's claim of lack of probable cause was inextricably linked with the disputed circumstances surrounding his First Amendment claims. According to the court, Wall did not state that he aided in arresting Enlow because he had probable cause to believe that Enlow was engaged in illegal gambling. Wall relied upon Enlow's alleged inciteful speech to create the probable cause for the arrest. Since material facts remained in dispute as to what occurred the night of the bingo game, the court found that Wall was not entitled to summary judgment based on qualified immunity.

As to the First Amendment violations alleged by Deaton and Enlow concerning Wall's grand jury testimony, the district court concluded that the appellees had presented sufficient evidence to create factual disputes regarding Wall's motive and participation in the decision to renew the criminal charges. Consequently, the district court ruled that Wall had failed to show as a matter of law his entitlement to absolute immunity.

The district court also considered Enlow and Deaton's claim that Wall's grand jury testimony, resulting in indictments against them, constituted malicious prosecution and abuse of process.[13] With regard to the malicious prosecution assertion, the court found that whether or not Wall participated in the decision to bring charges against them after the earlier charge against Enlow had been *nol-prossed* was a fact determination best made at trial. Fact issues also existed on the elements of malice and lack of probable cause. Similarly, in addressing the plaintiffs' abuse of process claim, the district court found that the plaintiffs presented sufficient evidence to create a factual dispute regarding Wall's alleged ulterior motives; consequently, summary judgment was inappropriate.

## II.  DISCUSSION

### A.  JURISDICTION

#### 1.  Successive Summary Judgment Motions

Initially, we consider the appellees' claim that this Court lacks jurisdiction to hear this appeal. According to the appellees, jurisdiction emerges as the pivotal issue in this case. They first contend that *Mitchell v. Forsyth*, 472 U.S. 511, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985), fails to provide the requisite basis for an appeal.[14] The decision that Wall would have to stand trial occurred when the district court denied his first motion for summary judgment on August 29, 1989. Wall did not appeal this order. Consequently, enabling Wall to file a second motion for summary judgment results in a mockery of the requirement that notice to appeal must be perfected within thirty days after the date of entry of the judgment or order. Fed.R.App.P. 4(a)(1).

Successive motions for summary judgment, however, are not always aberrational. Courts have found that a subsequent summary judgment motion based on an expanded record is permissible. *See, e.g., Williamsburg Wax Museum, Inc. v. Historic Figures, Inc.*, 810 F.2d 243, 251 (D.C.Cir.1987). The appellees contend, however, that no expansion of the record occurred in the present case. The additional evidentiary material added no additional grounds for immunity. According to appel-

---

**12.** Wall appeals only Enlow's claim of a Fourth Amendment violation, not Deaton's. The district court granted Wall summary judgment on Deaton's Fourth Amendment claim—damages for injury to her ankle and mental anxiety caused by the allegedly unlawful arrest of her father—as well as Harold's Enterprises, Inc.'s claim—damages for the seizure of the premises without probable cause.

**13.** The district court found that it was unclear whether the plaintiffs brought their malicious prosecution and abuse of process claims only

under state law or under federal law as well. The district court opted to give the plaintiffs "the benefit of the doubt" and assumed they sought liability also under federal law.

**14.** Under *Mitchell* and its progeny, the Supreme Court established that a determination that an official is not immune from suit constitutes a "final order" under 28 U.S.C. § 1291 and is automatically appealable since it represents a "final decision" that the official will have to stand trial.

lees, the assertion of a new theory of recovery, retaliation for filing of the section 1983 action, does not suffice.

The district court, however, opted to allow a successive motion for summary judgment.[15] Such a determination, particularly regarding questions of the timing and sequence of motions in the district court, best lies at the district court's discretion.[16] At the outset of the litigation, prior to discovery,[17] Wall had moved for summary judgment on the basis of qualified immunity. At that juncture, the district court found that questions of material fact remained. Wall's second summary judgment motion then followed discovery and amendment of the pleadings. The district court did not reject such a procedural move and ruled accordingly. Moreover, no objection was interposed below that Wall's second motion was untimely. The district court, within its discretionary purview, opted to entertain the second motion. This belies a conclusion that the trial court had already made a determination intended to be final that Wall would have to stand trial. Accordingly, we reject the appellees' first jurisdictional contention.

### 2. Pendent State Law Claims

The appellees next assert that because this suit must proceed on the state law claims, the district court's denial of Wall's qualified immunity was not a final denial of Wall's right to be free from suit for damages. Consequently, there is no final order from which to appeal. Appellees' contention is meritless. The existence of pendent state law claims does not affect this Court's jurisdiction to consider Wall's qualified immunity defense. This Court regularly entertains appeals by public officials from denial of motions on qualified immunity grounds, notwithstanding the presence of pendent state law claims. *See, e.g., Reese v. Anderson,* 926 F.2d 494, 501 (5th Cir.1991); *Gassner v. City of Garland, Texas,* 864 F.2d 394, 400–01 (5th Cir. 1989).

Further, the appellees attempt to analogize the notion of pendent state law claims and lack of jurisdiction with the notion of prospective and retrospective relief and lack of jurisdiction. They argue that where a civil rights suit contains both legal and equitable claims, a denial of qualified immunity is not appealable since the case must still proceed on the equitable claims.[18] Such a contention is unavailing for at least two reasons. First, we do not find in the present case a claim for declaratory and/or injunctive (prospective) relief; second, the courts regularly review the denial of various claims of immunity from damages (retrospective relief) notwithstanding the presence of a claim for prospective relief. *See, e.g., Chrissy F. By Medley v. Mississippi Department of Public Welfare,* 925 F.2d 844, 849 (5th Cir.1991). Consequently, we also reject the appellees' second jurisdictional argument. We find that this case is

**15.** The district court stated:

> Since [the first Motion for Summary Judgment was filed and denied], however, plaintiffs have filed a fourth amended complaint and further discovery has been completed. Thus, the court considers Wall's second motion for summary judgment in light of these new facts. The other two defendants, Sheriff Dobbs and Tishomingo County, have not filed motions for summary judgment.

**16.** As this Court has repeatedly said, "[t]he district court has broad discretion in controlling its own docket." *Edwards v. Cass County, Texas,* 919 F.2d 273, 275 (5th Cir.1990). In fact, the district court may reconsider a previously denied summary judgment motion even in the absence of new material presented. *See Sewell Plastics, Inc. v. Coca–Cola Co.,* 720 F.Supp. 1196, 1215 (W.D.N.C.1989), *aff'd in part and remand-*

*ed in part,* 912 F.2d 463 (4th Cir.1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1019, 112 L.Ed.2d 1101 (1991).

**17.** At oral argument, Wall asserted that contrary to the district court's statement, no discovery had occurred prior to the first summary judgment motion. The appellees do not refute this contention.

**18.** They cite primarily *Prisco v. United States Department of Justice,* 851 F.2d 93, 96 (3rd Cir. 1988) (footnote omitted), *cert. denied,* 490 U.S. 1089, 109 S.Ct. 2428, 104 L.Ed.2d 985 (1989), which held that "in an action in which claims for prospective [injunctive and declaratory] relief remain pending, a party against whom they remain pending may not appeal from the denial of a motion for summary judgment on immunity grounds."

not fraught with jurisdictional quandaries as the appellees maintain.

## B. JURISDICTION & STANDARD OF REVIEW

In *Mitchell v. Forsyth,* 472 U.S. 511, 530, 105 S.Ct. 2806, 2817, 86 L.E.2d 411 (1985), the Court held that "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment." Appellate review in these cases, although limited to questions of law, necessitates the consideration of the factual allegations which compose the plaintiff's claim for relief. *Mitchell,* 472 U.S. at 528, 105 S.Ct. at 2816. Thus, jurisdiction over an appeal from a denial of a claim of immunity requires the review of all disputed and undisputed facts to determine whether the plaintiff states a claim upon which relief may be granted. The appeal of a denial of qualified immunity "avoid[s] excessive disruption of government and permit[s] the resolution of many insubstantial claims on summary judgment." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.E.2d 396 (1982). Since qualified immunity creates immunity from suit it should be resolved, if possible, at the earliest possible stage of litigation. *Nieto v. San Perlita Independent School District,* 894 F.2d 174, 177 (5th Cir.1990).

Qualified immunity operates to shield government officials performing discretionary functions "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton,* 483 U.S. 635, 638, 107 S.Ct. 3034, 3038, 97 L.Ed.2d 523 (1983) (citation omitted). "[W]here an official's duties legitimately require action in which clearly established rights are not implicated, the public interest may be better served by action taken 'with independence and without fear of consequences.' " *Mitchell,* 472 U.S. at 525, 105 S.Ct. at 2815 (citations omitted). Whether a defendant asserting qualified immunity may be personally liable turns on the objective legal reasonableness of the defendant's actions in light of clearly established law. *Id.* at 639, 107 S.Ct. at 3038.

The Supreme Court recently clarified the analytical structure for reviewing an appeal of a denial of a motion for summary judgment asserting qualified immunity. *Siegert v. Gilley,* —— U.S. ——, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991), held that a court must decide if the plaintiff alleged a violation of a clearly established constitutional right. Only if such an allegation is found, then the court must decide whether the public official's actions could reasonably have been thought consistent with the constitutional right.[19] The Court supported its two-step analysis by pointing out that first determining whether the plaintiff has asserted a violation of a constitutional right, a legal question, "permits courts expeditiously to weed out suits which fail the test without requiring a defendant who rightly claims qualified immunity to engage in expensive and time consuming preparation to defend the suit on its merits."

We examine the appellees' claims, taken as true, to ascertain whether they are sufficient to allege the existence of violations of their clearly established constitutional rights. If constitutional violations are al-

---

**19.** Prior to *Siegert,* Courts generally examined the defendant's entitlement to the qualified immunity·defense before examining the merits of the plaintiff's constitutional claim. *See Pfannstiel v. City of Marion,* 918 F.2d 1178, 1183 (5th Cir.1990) (finding that the plaintiff has the burden of submitting summary judgment evidence to create a genuine issue as to whether the defendant's· conduct was objectively reasonable); *Mouille v. City of Live Oak,* 918 F.2d 548, 551 (5th Cir.1990) (establishing that the court must determine whether the defendant's conduct is qualifiedly immune before reaching the merits of a section 1983 claim). *But see Connelly v. Comptroller of the Currency,* 876 F.2d 1209, 1212 (5th Cir.1989) ("the court must be able to characterize the plaintiff's claim precisely as a matter of constitutional law before ruling upon an immunity defense"); *Brawner v. City of Richardson, Texas,* 855 F.2d 187, 191 (5th Cir.1988) (the qualified-immunity claim requires two steps—an initial determination as to whether the claim is viable, and if so, the employment of the qualified immunity reasonable official test).

leged, we then address the issue of Wall's qualified and/or absolute immunity. "[T]he resolution of these legal issues entail consideration of the factual allegations that make up the plaintiff[s']. claims for relief," *Mitchell*, 472 U.S. at 528, 105 S.Ct. at 2816. The issue involved is a legal one, and review is *de novo*. *Johnson v. Odom*, 910 F.2d 1273, 1277 (5th Cir.1990) (per curiam), *cert. denied,* — U.S. —, 111 S.Ct. 1387, 113 L.Ed.2d 443 (1991).

## C. CONSTITUTIONAL CLAIMS

### 1. The Arrest

*a. First Amendment*

■ Our initial determination under *Siegert* is whether the plaintiffs' claims are viable—whether they comprise constitutional violations. We address the threshold inquiry: whether Enlow alleges that he has been deprived of rights secured by the First Amendment. Enlow maintains that he was arrested after merely inquiring about the search and arrest warrants and taking a photograph of the Sheriff and the seizure in progress. Specifically, Enlow asserts that he questioned the officers prior to their public declaration of the raid. Consequently, he played no part in inciting the crowd to become unruly. Further, Enlow contends that at no time did he persist in "hollering"; he merely asked two questions, and after being told of imminent arrest if "he did not shut [his] mouth," he became "speechless." Enlow concedes that, after borrowing a camera from a bystander, he did take a picture of the Sheriff "raking the money in a garbage can." According to Enlow, he was then told he was under arrest for "interference with a raid," not for "resisting the seizure of gambling

funds by a law enforcement officer" as charged.

On the assumption that Enlow's allegations concerning his speech are true, we address whether Enlow's speech merits protection. As the Supreme Court cogently stated in *City of Houston, Texas v. Hill*, 482 U.S. 451, 461, 107 S.Ct. 2502, 2509, 96 L.Ed.2d 398 (1987), "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." [20] "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." 482 U.S. at 462–63, 107 S.Ct. at 2510. Further, the Court suggested that the "fighting words" exception, *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–72, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942), "might require a narrower application in cases involving words addressed to a police officer." "[A] properly trained officer may reasonably be expected to 'exercise a higher degree of restraint' than the average citizen, and thus be less likely to respond belligerently to 'fighting words.'" We find that Enlow's allegations are sufficient to state a cognizable First Amendment claim since his speech fails to rise above "inconvenience, annoyance, or unrest," *Terminiello v. City of Chicago*, 337 U.S. 1, 4, 69 S.Ct. 894, 895, 93 L.Ed. 1131 (1949), or constitute an incitement to immediate lawless action.

Proceeding to the second step of the analysis under *Siegert*, we disagree with Wall's assertion that though facts were disputed below, they are minor and peripheral and should not impede summary judg-

**20.** The plaintiffs asserted below that the statute at issue in *Hill* was analogous to the one in the present case. The municipal ordinance in *Hill* made it unlawful for a person to "assault, strike, or in any manner oppose, molest, abuse or interrupt" a police officer in the performance of his duty. 482 U.S. at 455, 107 S.Ct. at 2506. The Court found this ordinance unconstitutional as "substantially overbroad," concluding that the ordinance impermissibly prohibited verbal interruptions of police officers which fell below the level of "'fighting words'" or a "'clear and

present danger of a serious substantive evil.'" 482 U.S. at 461–63, 467, 107 S.Ct. at 2509–2511, 2512 (citations omitted). As the district court found, however, unlike the ordinance in *Hill*, the Mississippi provision is capable of construction that respects the First Amendment. Section 97–33–19 does not on its face prohibit verbal commentary against police officers, and no Mississippi case appears to have given the provision such an interpretation. Though the district court did not find the Mississippi statute to be overbroad, it did leave open the question wheth-

ment on qualified immunity grounds.[21] Throughout the briefs, Wall perforce ignores that the circumstances leading up to Enlow's arrest are substantially disputed. As the district court said: "Whether Wall was really arresting [Enlow] because he feared a riot or whether he was arresting [Enlow] because [Enlow] had exercised his First Amendment rights by demanding to know whether there was a search warrant or arrest warrant [is] a question of fact for the jury." We conclude that the district court correctly determined that material facts remain in dispute concerning whether Wall was entitled to claim immunity as having acted reasonably in the context of Enlow's First Amendment claim.

### b. Fourth Amendment

■ Enlow asserts that his arrest was without probable cause, and thus violative of his Fourth Amendment rights. Taking Enlow's allegations, as detailed above, to be true, we find that Enlow has satisfied *Siegert*'s first inquiry—he has also set forth a violation of a clearly established Fourth Amendment right. We now address the second inquiry under *Siegert*— Wall's entitlement to his qualified immunity defense.

Wall argues that the arrest did not violate the Fourth Amendment because probable cause plainly existed to arrest Enlow for conduct violating the statute making opposition to a seizure unlawful.[22] According to Wall, notwithstanding the prior warnings, Enlow physically interfered with the Sheriff's performance of his duties in the seizure by temporarily blinding him, conduct which had obvious implications for the safety of the Sheriff and officers in an imminently hostile environment.[23] As we determined above, whether an imminently

hostile environment justifying arrest existed and thus Wall acted reasonably in the face of the Fourth Amendment claim, remains a question of fact. We adhere to the district court's determination that the probable cause question is intertwined at least in part with the First Amendment inquiry but also includes additional factual issues. This query must go to the trier of fact. *See Garris v. Rowland*, 678 F.2d 1264, 1270 (5th Cir.), *cert. denied*, 459 U.S. 864, 103 S.Ct. 143, 74 L.Ed.2d 121 (1982) (noting that if the facts relied upon to show probable cause are in conflict, then the issue must be submitted to the jury). Whether or not Wall can claim qualified immunity from Enlow's Fourth Amendment claims remains a fact-disputed issue.

### 2. Grand Jury Testimony

### a. First Amendment

■ Enlow and Deaton maintain that Wall's participation in presenting gambling charges to the grand jury subsequent to their decision to file suit in federal court constitutes conduct proscribed by the Constitution and denies his claim of immunity in his testimony. They rely on Wall's own deposition in which Wall concedes that he failed to see Enlow or Deaton perform any gambling activities the night of the raid. Further, and of great significance, is the fact that he clearly acknowledges possessing no new information at all at the time of his grand jury testimony. We find that the appellees have alleged a cognizable First Amendment violation.

Having satisfied *Siegert*'s first step, we turn to the second inquiry. Wall contends that his only involvement with the plaintiffs other than Enlow's initial arrest is his

---

er the provision was constitutional as applied to Enlow.

**21.** Wall paints a picture of a crowd on the verge of a riot, incited by Enlow. After verbally seeking to halt the seizure of the gambling funds, Enlow then proceeded to blind the Sheriff with his camera, making an arrest the only logical alternative.

**22.** Note, the district court found that Wall stated that he helped arrest Enlow because of his allegedly inciteful speech.

**23.** Alternatively, Wall contends that even assuming that probable cause did not exist, qualified immunity still shields the officer if a reasonable officer "could have believed" that probable cause to arrest existed. However, Wall espouses a pre-*Siegert* analysis. As discussed earlier, the inquiry no longer commences with an assumption that a constitutional violation exists and thus only the reasonableness of the officer needs to be assessed. *See, e.g., Gassner v. City of Garland, Texas*, 864 F.2d 394, 398 (5th Cir. 1989).

testimony as a witness for the grand jury as to "what he did, saw, and heard" on the night of the bingo raid.[24] Contrary to the district court's decision, Wall maintains that no material fact in dispute exists; thus, he is entitled to absolute immunity from suit for his testimony.

■■■■ Whether an official is entitled to absolute or qualified immunity depends on the nature of the official's function at issue. *Forrester v. White,* 484 U.S. 219, 227, 108 S.Ct. 538, 544, 98 L.Ed.2d 555 (1988). Prosecuting attorneys, for instance, are entitled to absolute immunity for their conduct in initiating a prosecution and in presenting the State's case—these activities are "intimately associated with the judicial phase of the criminal process." *Imbler v. Pachtman,* 424 U.S. 409, 430–31, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976). Witnesses, including police officers, are also shielded by absolute immunity from liability for their allegedly perjurious testimony. *Briscoe v. LaHue,* 460 U.S. 325, 346, 103 S.Ct. 1108, 1121, 75 L.Ed.2d 96

(1983).[25] Recently, in *Burns v. Reed,* —— U.S. ——, 111 S.Ct. 1934, 1942, 114 L.Ed.2d 547 (1991), the Supreme Court found that a prosecutor is absolutely immune from liability for participating in a probable cause hearing. Wall strongly urges this Court to find that under *Briscoe,* its progeny, and *Burns,*[26] he is absolutely immune from a section 1983 action for his testimony.[27]

■■■■ In advocating the extension of *Briscoe* and other such cases to his grand jury testimony, Wall obfuscates a crucial distinction. In resolving questions of immunity, the common law[28] distinguished between defamation actions and actions for malicious prosecution, cloaking with absolute immunity a witness in the former but not the latter.[29] At this stage, however, we cannot make a determination as to Wall's immunity, either absolute or qualified. We find that disputed factual issues remain regarding Wall's role in actively instigating, encouraging, and/or perpetuating Enlow and Deaton's prosecution, as well as regarding the events that tran-

24. At one point in his brief, without explanation, Wall refers to his testimony at the plaintiffs' criminal trial. Because we do not find other references to this in the record, we follow the district court and focus solely on the grand jury testimony.

25. Applying *Briscoe,* some Courts have held that witnesses who testify before a grand jury are entitled to absolute immunity. *See, e.g., Strength v. Hubert,* 854 F.2d 421, 426 (11th Cir. 1988) (per curiam); *Little v. City of Seattle,* 863 F.2d 681, 684 (9th Cir.1988); *Kompare v. Stein,* 801 F.2d 883, 890 (7th Cir.1986).

26. Wall also asserts that under *Oliver v. Collins,* 904 F.2d 278 (5th Cir.1990), he is immune from a section 1983 action. His reliance on *Collins* is inapposite. There, an inmate at the Texas Department of Corrections contended that a county sheriff's failure to press criminal charges against the officers involved in the alleged assault deprived the inmate of various constitutional rights. In response, this Court found that even if the Sheriff had the authority to decide whether or not to pursue criminal charges, the inmate would not have a claim because of prosecutorial immunity for acts constituting an integral part of the judicial process. We fail to see any significance to the present case. Appellees argue the existence of First Amendment, Fourteenth Amendment and various state law violations, claims not readily apparent from the facts in *Collins.* Further, appellees do not necessarily

assert that Wall had the power to pursue criminal charges. They contend that Wall played a pivotal role in the grand jury indictments and in ensuing and continuing criminal prosecutions against them in retaliation for filing the underlying suit.

27. At times, Wall appears to assert a qualified immunity defense; it is unclear whether this is an alternative contention.

28. In determining whether an immunity defense is available in a section 1983 suit, a critical initial question is "whether an official claiming immunity under § 1983 can point to a common-law counterpart to the privilege he asserts." *Malley v. Briggs,* 475 U.S. 335, 339–40, 106 S.Ct. 1092, 1095, 89 L.Ed.2d 271 (1986).

29. In a defamation action, as was *Briscoe,* a plaintiff seeks to hold a perjurious witness liable for the defamatory effect of his testimony; at common law, the witness enjoyed absolute immunity upon a threshold showing that the allegedly defamatory statements were relevant to the judicial proceeding. *Briscoe,* 460 U.S. at 330–31, 103 S.Ct. at 1113–14. In a malicious prosecution action, however, as in the present case, a plaintiff seeks to hold the complaining witness liable for the witness's role in the initiation of a baseless prosecution; at common law, complaining witnesses were not absolutely immune. *Briggs,* 475 U.S. at 340, 106 S.Ct. at 1096.

spired prior to the grand jury testimony. Further, Wall's statements at his deposition raise a genuine issue whether Wall's testimony was in retaliation for appellees' suit. We find that summary judgment was properly denied. Sufficient disputed evidence exists to support the possibility that Wall's actions were taken in retaliation for an exercise by appellees of their constitutionally protected freedoms.[30]

### b. State Law Claims

▮▮▮ Enlow and Deaton argue that Wall's grand jury testimony, resulting in indictments against them, constituted malicious prosecution and abuse of process. We first address the appellees' malicious prosecution claim. "There is a constitutional right to be free of 'bad faith prosecution.'" *Hand v. Gary*, 838 F.2d 1420, 1424 (5th Cir.1988). Under Mississippi law, a plaintiff must prove the following for a malicious prosecution claim: (1) the institution of criminal proceedings by, or at the insistence of, the defendant; (2) the termination of such proceedings in the plaintiff's favor; (3) malice in instituting the procedure; (4) want of probable cause for the proceedings; and (5) the suffering of damages as a result of the prosecution. *Royal Oil Co. v. Wells*, 500 So.2d 439, 442 (Miss. 1986). The appellees point to the testimony in Wall's deposition in which he acknowledges that though officials had no reason to arrest Deaton during the raid in September, they later arrested her and brought charges against her, only about a month after she and Enlow commenced their section 1983 action. Further, they point to the testimony in Wall's deposition in which he concedes that he had no new evidence against either Deaton or Enlow at the time of his grand jury testimony. On the assumption that Enlow and Deaton's asser-

tions are true, we find that they allege a malicious prosecution claim.

We now must examine Wall's factual support for a qualified immunity defense. Wall contends that because he did not initiate criminal proceedings against the appellees nor insist that they go forward, appellees have failed, at a minimum, to raise a material fact issue as to the first element of the tort. In support of his contention, he supplies the deposition of an assistant district attorney, Richard Bowen, who testified that Sheriff Dobbs directed Wall to make the initial arrest. As the district court correctly noted, however, the arrest at the rink the night of the raid is separate from the decision to bring subsequent charges against Enlow and Deaton after the prior charge against Enlow had been *nol-prossed*. The district court found that whether Wall participated in this decision was a fact remaining to be resolved at trial. Further, factual issues exist impeding an assessment of the elements of malice and lack of probable cause. We agree. Summary judgment was properly denied.

▮▮▮ Finally, we address appellees' abuse of process claim. Under Mississippi jurisprudence, the essential elements of a cause of action for abuse of process include (1) the existence of an ulterior purpose, (2) the malicious perversion of process for a purpose and to obtain a result not lawfully warranted or properly attainable, and (3) a demonstration of damages resulting from the abuse. *State, Use and Benefit of Foster v. Turner*, 319 So.2d 233, 236 (Miss. 1975). As with their claims for malicious prosecution, we conclude that Enlow and Deaton have alleged a viable abuse of process claim. Wall's contentions against this allegation are analogous to his arguments against the malicious prosecution claim. We find there are disputed material facts which must be resolved at trial to

---

**30.** Appellees peripherally assert that Wall's retaliation also violates substantive due process as guaranteed by the Fourteenth Amendment. They urge the application of *Wheeler v. Cosden Oil & Chemical Co.*, 734 F.2d 254, 260 (5th Cir.), *modified but reaffirmed in relevant part*, 744 F.2d 1131 (5th Cir.1984), where this Court concluded that a right against "capricious prosecutions" was incorporated by the Fourteenth Amendment, and thus potential grounds for a section 1983 action. Capricious prosecutions would be those procured by false and misleading information that would cause a prosecutor to wrongly believe probable cause existed. Such a contention, however, does not merit review at this time, since we conclude material issues of fact exist as to the asserted immunity from a First Amendment violation.

determine the validity of Wall's qualified or absolute immunity defense. These factual disputes involve Wall's motive, role, and actions. Thus, we affirm the district court's denial of a summary judgment based upon immunity as to the abuse of process allegation.

### III. CONCLUSION

Our review of the record supports appellees' argument that the dispute about the facts affecting Wall's claims of immunity is genuine. Enlow undertakes to prove that the restraint upon his speech violated the First Amendment, that his initial arrest lacked probable cause in violation of the Fourth Amendment, that his and Deaton's First Amendment rights were violated by Wall's retaliatory actions, and that appellees were maliciously prosecuted. Wall's qualified or absolute immunity defenses are dependent upon the appellees' inability to prove these disputed issues of fact to determine if Wall's actions were reasonably consistent with these constitutional or state law rights. We find that the district court properly denied Wall's summary judgment motion on all counts. The facts as to Wall's asserted immunity defenses must be determined at trial.

AFFIRMED.