**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

---

No. 93-7173

---

HAROLD WAYNE ENLOW, (Angela Deaton, Donathon Enlow,
Lisa James and Martha Enlow, as
Personal Representatives of appellant
Harold Wayne Enlow, for Substitution in the
Place and Stead of the Appellant Harold Wayne Enlow), et al.,

Plaintiffs-Appellants,

VERSUS

TISHOMINGO COUNTY, MISSISSIPPI, ET AL.,

Defendants-Appellees.

---

Appeal from the United States District Court
For the Northern District of Mississippi
(CA EC89 61 D D)

(January 6, 1995)

Before REYNALDO G. GARZA, DeMOSS, and PARKER, Circuit Judges.

PER CURIAM:[*]

The plaintiffs filed a § 1983 suit against Tishomingo County, County Sheriff Richard Dobbs, and State Highway Patrol Investigator Jim Wall, alleging that the defendants violated the plaintiffs'

---

[*]Local Rule 47.5 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that Rule, the Court has determined that this opinion should not be published.

constitutional and state common law rights. The district court ruled for the defendants on a variety of motions. The plaintiffs appealed, and we now affirm.

## I.

The facts in this case are described at length in our opinion disposing of an interlocutory appeal in this case. See Enlow v. Tishomingo County, 962 F.2d 501, 503-06 (5th Cir. 1992) (Enlow I). We recount only a portion of those facts here. Throughout the 1980s, Harold Wayne Enlow owned and, with the help of his daughter, Angela Deaton, operated a skating rink in Iuka, Mississippi. In September 1988, he leased the premises to a Tennessee company that, according to Enlow, represented to him that the premises would be used for non-profit bingo games. Tishomingo County law enforcement officials received a tip that, in fact, the premises were being used for illegal gambling. On the night the "bingo game" opened, Sheriff Dobbs, Investigator Wall, and several other officers raided the premises.

Enlow challenged Dobbs' authority to raid the operation, whereupon Enlow was arrested for interfering with the raid.[1] Pursuant to Mississippi law at the time of his arrest, Enlow was

---

[1]Enlow specifically was charged with violating a Mississippi law which prohibits anyone from opposing the seizure of gambling funds. The statute reads as follows:

> Any person or persons who shall oppose the seizure of any such moneys or appliances by an officer or person so authorized to make it, shall, on conviction thereof, be liable to a penalty of fifteen hundred dollars; and any person who shall take any part of said money after the said seizure shall be declared, shall be guilty of a misdemeanor, and on conviction thereof, shall be fined and imprisoned, at the discretion of the court.

MISS. CODE ANN. § 97-33-19.

required to post a two percent bond fee, or $60, for executing his $3,000 security bond to be released from jail.[2]  The interference charge against Enlow ultimately was "nol. prossed"[3] in February 1989.  Dobbs testified below that he urged that the charge, which is a misdemeanor offense, be dropped so that he could present a broader range of charges to the next grand jury, whose term was scheduled to begin in April 1989.  Dobbs expected the charges to include the misdemeanor interference charge <u>along with</u> various gambling-related charges, one of which is a felony.[4]

The plaintiffs[5] filed this § 1983 suit in March 1989.  They originally complained:

> (1)  Wall and Dobbs violated Enlow's First Amendment right to speak out against the raid and his Fourth Amendment right not to be arrested without probable cause;

---

[2]The bond fee statute, at the time of Enlow's arrest, read as follows:
> Upon every defendant charged with a criminal offense who posts a cash bail bond, a surety bail bond or property bail bond conditioned for his appearance at trial, there is hereby imposed a fee equal to two percent (2%) of the face value of each bond or twenty dollars ($20), whichever is greater.

MISS. CODE ANN. § 99-1-19(2) (Supp. 1990).

[3]This term is short for "nolle prosequi," whereby the prosecutor declares that he will not prosecute the case further. BLACK'S LAW DICTIONARY 945 (5th ed. 1979).  The nol. pros. order was entered by the county's Justice Court in February 1989.  The term presumably carries no double jeopardy implications because, as discussed below, the state eventually indicted and tried Enlow, along with Deaton, for various gambling-related offenses.

[4]The previous grand jury term had expired in September 1988, meaning no felony indictments could be issued between September 1988 and April 1989.

[5]The plaintiffs include not only Enlow and Deaton but also Harold Enterprises, Inc., which owned a leasehold interest in the skating rink.

3

> (2) the statute pursuant to which Enlow was arrested ("the interference statute") is facially unconstitutional under the free speech clause of the First Amendment;
>
> (3) the two percent bond fee statute ("the bond fee statute") at that time was facially unconstitutional under the due process clause of the Fourteenth Amendment and the takings clause of the Fifth Amendment; and
>
> (4) Dobbs violated the plaintiffs' Fourth Amendment right against improper seizures.

No criminal charges against Enlow and Deaton were pending when they filed their suit. However, Assistant District Attorney (ADA) Roland Geddie, as planned, presented a broader range of offenses to the grand jury in April 1989. Under Geddie's instructions, Investigator Wall testified before the grand jury regarding the events surrounding the raid. Wall was the only witness who testified. The grand jury indicted Enlow and Deaton for various gambling-related offenses, whereupon Enlow (for the second time) and Deaton (for the first time) had to pay two percent of their bond as a fee. The two were prosecuted but were never convicted of any of the offenses.

In response to the criminal prosecution, the plaintiffs amended their complaint in April 1989 to include a retaliation claim against Wall and Dobbs. The plaintiffs specifically complained:

> (1) Wall and Dobbs violated Enlow's and Deaton's First Amendment rights to sue the officers without retaliation; and
>
> (2) Wall and Dobbs violated Enlow's and Deaton's Fourteenth Amendment right against malicious prosecution AND their state law rights against malicious prosecution and abuse of process.

4

After considerable discovery, the plaintiffs and Wall each moved for summary judgment. Wall moved for summary judgment in June 1990[6] as to the § 1983 claims and the state law malicious prosecution/abuse of process claims. He specifically argued that he was entitled to qualified immunity from any claims arising out of Enlow's and Deaton's arrest in September 1988. In addition, Wall argued that he was entitled to absolute immunity from any claims arising from his grand jury testimony. The plaintiffs, meanwhile, moved for summary judgment in July 1990 on their constitutional challenges to the interference statute and the bond fee statute.

The district court issued its ruling in November 1990. See Enlow v. Tishomingo County, 1990 WL 366913 (N.D. Miss. 1990). The court first addressed the plaintiffs' motion for summary judgment as to the constitutionality of the two statutes. The court found that the interference statute was not facially invalid because it "is capable of construction that respects the first amendment." The court also concluded that the bond fee statute violated neither the fourteenth nor the fifth amendments. The court then addressed Wall's motion for summary judgment. The court denied Wall's motion, finding that whether Wall was qualifiedly immune (i.e., whether Wall acted as a reasonable officer with a reasonable understanding of the plaintiffs' constitutional rights) was a fact

---

[6]Wall had moved for summary judgment in April 1989, prior to any discovery. He argued that he was entitled to qualified immunity from any of the plaintiffs' claims. The district court denied Wall's motion in September 1989.

5

issue. The court also rejected Wall's claim of absolute immunity regarding his grand jury testimony. Wall appealed the court's denial of his summary judgment motion. We held that the dispute over the facts regarding Wall's claims of immunity was genuine and, therefore, affirmed the district court's ruling. See Enlow I, 962 F.2d at 509-13.

The case then proceeded to trial. Following the presentation of all the evidence, the defendants moved for a directed verdict as to the plaintiffs' claims that Wall and Dobbs retaliated against them for filing the § 1983 suit. The court granted the motion. The plaintiffs then moved for a directed verdict as to their claim that Sheriff Dobbs improperly seized their property. The court denied their motion. The outstanding claims (i.e., whether the defendants violated Enlow's first and fourth amendment rights when they arrested him during the raid, and whether Sheriff Dobbs violated the plaintiffs' fourth amendment rights when he seized their property) were submitted to the jury. The jury ruled in favor of the defendants as to each claim.

The plaintiffs now appeal: (1) the court's directed verdict for Wall and Dobbs on the plaintiffs' retaliation claims, (2) the court's ruling on the constitutionality of both the interference statute and the bond fee statute, and (3) the court's refusal to direct a verdict for the plaintiffs' claim that Dobbs improperly seized their property.

6

II.

A.

We review a directed verdict de novo, applying the same standard as the district court. Becker v. Paine Webber, Inc., 962 F.2d 524, 526 (5th Cir. 1992). Accordingly, we must view the facts, and any reasonable inferences that may be drawn therefrom, in the light most favorable to the non-movant. Turner v. Purina Mills, Inc., 989 F.2d 1419, 1421 (5th Cir. 1993). If the facts and inferences point so strongly and overwhelmingly in favor of one party, such that reasonable men could not arrive at a contrary verdict, the motion should be granted. Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc). A mere scintilla of evidence is insufficient to present a question for the jury. Id.

The plaintiffs at trial had claimed that Wall and Dobbs instigated the state to prosecute Enlow and Deaton in retaliation for their § 1983 suit and, therefore, violated Enlow's and Deaton's rights under the First Amendment (i.e., free speech), the Fourteenth Amendment (i.e., malicious prosecution), and Mississippi common law (i.e., malicious prosecution and abuse of process). The court ruled that, as to all of the defendants, the evidence did not present a question of fact upon which the jury could find that plaintiffs were indicted and prosecuted in retaliation for filing their § 1983 lawsuit.[7]

---

[7]The court alternatively ruled that Wall was entitled to absolute immunity from any claim arising from his grand jury testimony. Because we affirm the district court's directed verdict for the defendants, we do not reach the court's alternative holding.

On appeal, Enlow and Deaton argue that the evidence adduced below constitutes more than a "scintilla," thereby making a directed verdict inappropriate.[8] They concede that all of it is circumstantial, but argue that circumstantial evidence sometimes is sufficient not only to avoid a directed verdict but also to find liability. The plaintiffs argue that a reasonable jury could have inferred retaliatory intent because:

(1) Enlow was charged for a felony gambling offense only after he had filed his § 1983 suit;

(2) Deaton was charged <u>not</u> at the time of the raid but only after she had filed her § 1983 suit;

(3) Wall admitted that, after he learned of the § 1983 suit, several fellow officers told Wall he would be "better off" if Deaton were convicted;

(4) Wall and Dobbs admitted that they discussed the lawsuit prior to Wall's grand jury appearance;

(5) the timing of the indictments was too coincidental;

(6) Enlow and Deaton were custodially arrested after the indictments were issued whereas the other named defendants were not arrested;

_____

[8]The plaintiffs initially argue that the district court's refusal to submit the retaliation claims to the jury violated the law of the case doctrine because, in <u>Enlow I</u>, we found that material factual issues precluded summary judgment as to Wall's immunity claims. The district court rejected this argument below, reasoning that we had directed the court only to hear the evidence. The district court's ruling on this issue was correct. When the evidence in a subsequent trial is substantially different, a prior legal determination is not binding. <u>Illinois Cent. Gulf R.R. Co. v. International Paper Co.</u>, 889 F.2d 536, 539 (5th Cir. 1989). In <u>Enlow I</u>, we did not resolve whether the plaintiffs had presented sufficient evidence to avoid a directed verdict. <u>See</u> <u>Enlow</u>, 962 F.2d at 510-13. Rather, we concluded that sufficient evidence existed, <u>at that stage of the proceeding</u>, to preclude summary judgment. <u>Id</u>. Between the court's ruling on Wall's motion for summary judgment and its ruling on the defendants' joint motion for directed verdict, the parties had presented all of their evidence.

8

(7) the other named defendants were permitted to plead guilty to misdemeanor offenses while Enlow and Deaton were tried for felony offenses; and

(8) Deaton and Enlow at trial below directly contradicted Wall's grand jury testimony that they insisted during the raid that the gambling funds belonged to them.

We disagree. The defendants at trial proffered extensive, uncontroverted direct evidence of their intent, prior to March 1989, to seek indictments. Specifically, each defendant testified that, as early as October 1988, they discussed their intention to seek indictments. Sheriff Dobbs also testified that at the meeting in February 1989, where Enlow's interference charge was nol. prossed, he stressed his intentions to seek indictments against all of the operation's participants. The county attorney who was present at the meeting corroborated Dobbs's testimony. Enlow's attorney at that time also was present at the meeting. The attorney did not testify below and, therefore, could not contradict Dobbs.

We also note that ADA Geddie testified at trial, without contradiction, that he alone directed the grand jury proceeding without encouragement or coercion from Wall or Dobbs. Specifically, Geddie initiated contact with Wall to instruct him to testify before the grand jury, decided which charges to pursue, and drafted the indictments. Finally, as to the remaining named defendants who were not arrested, Dobbs testified that because they resided in Tennessee, he had no authority to cross state lines and arrest them. While the plaintiffs correctly note that circumstantial evidence may be enough to avoid a directed verdict,

9

we cannot overlook the strength of the defendants' direct evidence to the contrary. In the final analysis, the plaintiffs' claim of retaliation rests largely on the sequence of litigation, i.e., the plaintiffs were prosecuted only after they had filed their § 1983 suit. We find this sequence of events, by itself, does not amount to a reasonable inference of retaliatory intent.

B.

The plaintiffs next appeal the district court's ruling as to the constitutionality of the interference and the bond fee statutes.[9] We have reviewed the parties' briefs and relevant portions of the record and have concluded that the district court's opinion regarding the plaintiffs' constitutional challenges to the statutes is well reasoned and correctly decided.

C.

Finally, the plaintiffs appeal the district court's refusal to direct a verdict for the plaintiffs regarding Sheriff Dobbs' seizure of their property. The jury below determined that the length of the seizure was not unreasonable. The plaintiffs, however, do not appeal the jury's verdict. Instead, they claim that the seizure was improper as a matter of law, and that the

---

[9]Several days before we heard oral argument, Investigator Wall "suggested" to the court that this portion of the plaintiffs' appeal was moot because Enlow had died while the appeal was pending. As a general rule, a claim for monetary damages must be resolved on the merits. Henschen v. City of Houston, 959 F.2d 584, 587-88 (5th Cir. 1992); 13A CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3533 (1984). Though the plaintiffs' complaints are somewhat inartfully drafted, we will construe them as claims for monetary damages.

district court should have granted their directed verdict motion for that reason.

When reviewing a denial of a motion for a directed verdict, we examine the record in a light most favorable to the party opposing the motion.  We reverse the district court <u>only if</u> we find there was no conflict in substantial evidence such that reasonable minds could differ.  <u>Horton v. Buhrke, A Division of Klein Tools, Inc.</u>, 926 F.2d 456, 459 (5th Cir. 1991).  We find that the district court's ruling in this case was proper.  The officers at the time of the seizure were lawfully within the building and seized the entire property in order to determine which items would be used as evidence in the subsequent prosecution.

### III.

For the foregoing reasons, the district court is AFFIRMED.