REVISED JANUARY 28, 2003

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 01-30622

_____

ANTHONY G. KEKO,

Plaintiff-Appellee-Appellant,

versus

I. F. HINGLE, ET AL.;

Appellants,

I. F. HINGLE; CHARLES BOWLES; CHARLES GUEY;
DON ENGLISH; SADIE WILLIAMS GUEY; ERNEST WOOTON;
COREGIS INSURANCE COMPANY,

Defendants-Appellees,

and

MICHAEL H. WEST, Dr.; ST. PAUL FIRE AND MARINE INSURANCE COMPANY,
Defendants-Appellants.

_____

Appeal from the United States District Court
for the Eastern District of Louisiana

_____

January 8, 2003

Before HIGGINBOTHAM, JONES, and BARKSDALE, Circuit Judges.

EDITH H. JONES, Circuit Judge:

Two interlocutory appeals have been brought from the district court's decisions in this 42 U.S.C. § 1983 action filed by Tony Keko to redress his overturned conviction of the 1991 murder

of his estranged wife Louise.  Keko appeals the court's rendition of a Rule 54(b)-certified summary judgment in favor of two sheriffs and several law enforcement and prosecutorial personnel involved in obtaining the conviction.  Dr. Michael H. West, whose tainted expert testimony led to the overturning of Keko's conviction, appeals from the denial of absolute immunity.  We affirm the former judgment and dismiss the appeal of the latter judgment.

The first judgement is readily analyzed.  Keko argues on appeal only that the appellees — Plaquemines Parish Sheriff Hingle, former Sheriff Wooten,[1] Sheriff's Officers Bowles, English, and Charles Guey, and District Attorney Investigator Sadie Guey — contributed to a constitutionally defective search warrant that, when approved by a state court judge, authorized *inter alia* the taking of dental impressions from Keko.[2]  Keko asserts that some information was knowingly omitted from the search warrant application and that some information included in the warrant application was either false or was incorrectly skewed against him.  He urges, in short, that the search warrant was so lacking in probable cause as to overcome the appellees' qualified immunity

---

[1]Wooten's name is misspelled in the caption of this case as "Wooton."  It is not clear that Keko has even briefed his appeal against Wooten's favorable judgment, but we address the issue as a convenience.

[2]The dental impressions, according to Dr. West, then a forensic odontologist, corresponded with bite marks found on Louise's exhumed body.  Dr. West's evidence provided the only direct evidentiary link at trial connecting Keko to the crime.

defense.  See Malley v. Briggs, 475 U.S. 335, 344-45, 106 S.Ct. 1092, 1098 (1986).  We disagree, but will not belabor this opinion by repeating the thorough analysis of the affidavit undertaken by the district court in a summary judgment hearing.  Keko raises no arguments here that were not fully and dispositively addressed at that time by the district court, and he advances few if any authorities remotely supporting his legal position.  The district court concluded that probable cause existed on the face of the affidavit, that any omissions were either neutral regarding probable cause or were helpful to Keko, and that, alternatively, the officers were shielded by qualified immunity for their objectively reasonable conduct in framing the affidavit.  Finding no error of law or fact, we affirm.

Dr. West's appeal of the denial of absolute immunity is more problematic.[3]  First, he is not an employee of Plaquemines Parish or of any state or local government agency.  Keko's allegations under § 1983 are viable against this private individual only because they include claims of conspiracy by Dr. West with state actors to commit malicious prosecution and to procure a falsely grounded arrest warrant.  As the Supreme Court has held, a

---

[3]The denial of an immunity defense may be subject to interlocutory appeal.  While this court has jurisdiction to rule on legal issues raised in such an appeal, we lack jurisdiction and must dismiss if the appeal turns on disputed material fact issues.  Johnson v. Jones, 515 U.S. 304, 314, 115 S.Ct. 2151, 2157 (1995); Cantu v. Rocha, 77 F.3d 795, 802-803 (5th Cir. 1996).

3

private party may be liable for conspiring with state actors to violate civil rights. <u>Dennis v. Sparks</u>, 449 U.S. 24, 101 S.Ct. 183 (1980). Second, while the existence of a constitutional tort of malicious prosecution has been questioned, the claim currently remains cognizable in this circuit. <u>See, e.g.,</u> <u>Kerr v. Lyford</u>, 171 F.3d 330, 340 (5th Cir. 1999); <u>see also</u> <u>Castellano v. Fragozo</u>, 311 F.3d 689, 712 (5th Cir. 2002) (Barksdale, J., dissenting). Dr. West has not contested the legal sufficiency of the claims against him. Nor has Dr. West challenged the district court's ruling that he might be entitled to qualified immunity, but fact issues preclude its being granted at this time.

Instead, and more boldly, Dr. West asserts that he is entitled to absolute immunity (a) for the expert witness report he authored, which was offered at a probable cause hearing to obtain an arrest warrant for Keko,[4] and (b) for the research and investigative work that led to preparation of the expert report. Although West has not been sued for his testimony at Keko's criminal trial, he bases his claim on the Supreme Court's decision in <u>Briscoe v. LaHue</u>, 460 U.S. 325, 103 S.Ct. 1108 (1983), holding that witnesses, like judges and prosecutors, are shielded by absolute immunity from § 1983 liability arising from their

---

[4]The *ex parte* probable cause hearing was a separate proceeding from the search warrant hearing that is the current basis for Keko's appeal against the sheriffs and law enforcement personnel.

4

participation in judicial proceedings.  Dr. West argues, not without force, that the protection of absolute immunity is lost if an expert witness, whose testimonial competence derives solely from the application of his expertise to an investigation conducted by the state,[5] may be sued for the activity that spawned his testimony. Or, as Judge Easterbrook put it,

> It would be a hollow immunity if the aggrieved party could turn around and say, in effect: "True, your delivery of bad testimony is immunized, but preparing to deliver that testimony is not, so I can litigate the substance of your testimony."  Substance is exactly what Briscoe puts off limits.

Buckley v. Fitzsimmons, 919 F.2d 1230, 1245 (7th Cir. 1990) (emphasis in original), rev'd on other grounds, 509 U.S. 259, 113 S.Ct. 2606 (1993) (affirming grant of absolute immunity to expert witnesses in criminal prosecution).

Unfortunately for Dr. West, the Supreme Court not only perpetuated absolute immunity for witnesses in judicial proceedings, based on an historical analysis of the law as it stood when § 1983 was enacted, but the Court has subsequently bounded absolute immunity within the precise confines of adversarial judicial proceedings.  Thus, when either a police officer or a prosecutor becomes a "complaining witness" in a probable cause hearing, neither official may claim absolute immunity.  Malley v. Briggs, supra (police officers); Kalina v. Fletcher, 522 U.S. 118, 118

---

[5]There is no allegation here that Dr. West participated in Keko's prosecution in any other way than by his role as an expert consultant and witness.

S.Ct. 502 (1997) (prosecutors). The action of applying for a warrant, the Court held, "while a vital part of the administration of criminal justice, is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." Malley, 475 U.S. at 342-43, 106 S.Ct. at 1097; see also Kalina, 522 U.S. at 129-30, 118 S.Ct. at 509 (distinguishing a prosecutor's preparation of an information and motion for warrant from executing the certification of underlying facts under penalty of perjury; the prosecutor in the latter capacity performed an act "any competent witness might have performed"). These decisions suggest that an informal, *ex parte* probable cause hearing is not the type of judicial proceeding for which a witness's testimony would require the full shield of absolute immunity.[6] The only "testimony" now at issue is his report submitted in such a probable

---

[6]In the wake of Briscoe, in contrast, cases have extended absolute testimonial immunity to testimony before the grand jury, post-indictment adversarial suppression hearings, and other adversarial criminal proceedings. See, e.g., Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999); Kincaid v. Eberle, 712 F.2d 1023, 1024 (7th Cir. 1983); Holt v. Castaneda, 832 F.2d 123, 125 (9th Cir. 1987), cert. denied, 485 U.S. 979 (1988); Strength v. Hubert, 854 F.2d 421, 423-25 (11th Cir. 1988); Macko v. Byron, 760 F.2d 95, 97 (6th Cir. 1985); Williams v. Hepting, 844 F.2d 138, 142 (3d Cir.), cert. denied 488 U.S. 851 (1988); see generally Martin A. Schwartz & John E. Kirklin, Section 1983 Litigation: Claims, Defenses, and Fees § 9:10, at 296-98 (3d ed. 1997); compare Moore v. McDonald, 30 F.3d 616, 619-20 (5th Cir. 1994) (absolute immunity for officer's testimony in adversarial pretrial suppression hearing) with Enlow v. Tishomingo County, Miss., 962 F.2d 501 (5th Cir. 1992) (false arrest distinguished from malicious prosecution claims; police officer not necessarily immune for perjurious grand jury testimony leading to constitutional malicious prosecution claim).

cause hearing.  We decline to extend absolute witness immunity into an arena where the Supreme Court has not found factual testimony to justify such heightened protection.  See also Wheeler v. Cosden Oil & Chem. Co., 734 F.2d 254, 261 (5th Cir.), modified on other grounds, 744 F.2d 1131 (police officer not absolutely immune from § 1983 malicious prosecution claim for false testimony at *ex parte* probable cause hearing).

To reinforce his reliance on Briscoe, Dr. West draws a distinction between Malley and Briscoe based on the role of the witness in the prosecution.  Under Malley, he urges, a "complaining witness" — one who instigates, encourages, or continues the prosecution — is only entitled to qualified immunity, while a "lay" witness (West's expression) must always be immune under Briscoe. For present purposes, West's use of the distinction is misplaced. He may be a complaining witness; in any event, this case presents a question of fact as to the degree of his participation in the prosecution that, on this record, cannot be resolved on summary judgment.  See Cervantes v. Jones, 188 F.3d 805, 810 n.5 (7th Cir. 1999).[7]   West may not have been a formal member of the prosecutorial team or responsible for final prosecutorial decisions, but his report stated that "indeed and without doubt" the bite marks he observed on the exhumed body of Louise Keko

---

[7]See also Enlow, supra, at 511 (fact issues preclude grant of absolute or qualified immunity).

matched Tony 's dental impressions.  Further, according to the state court, his report was critical to obtaining probable cause to arrest, he examined only Tony Keno's dental impressions and not those of any other potential suspect, and he performed his function at the behest of the sheriff's office to assist in "identifying" the attacker.  The complaining witness doctrine thus offers no defense as a matter of law to Dr. West.

The doctor also seeks absolute immunity for his pre-testimonial activities in examining Mrs. Keno's body, obtaining and examining Keko's dental impressions and writing a report.  He cites only policy statements enunciated in <u>Briscoe</u> and what he asserts are comparable policies surrounding absolute prosecutorial immunity to justify broadening the concept of testimonial immunity beyond what is introduced in the courtroom.  While we have some sympathy for the policy views he espouses, there is virtually no authority to support them.[8]  Further, to the extent Dr. West's pre-testimonial activities were investigative, his immunity ought to correlate with the merely qualified immunity granted to the police for comparable activities.  Thus, if, as alleged, Dr. West used shoddy and unscientific research techniques that resulted in a report critical to a baseless murder prosecution of Keko, there is

_____

[8]The expert witnesses were granted absolute immunity in <u>Buckley</u>, <u>supra</u>, but as the court's opinion granting absolute immunity to the prosecutors in that case was overturned by the Supreme Court, the status of his comparable decision for the experts seems uncertain.

no obvious reason why Dr. West should enjoy immunity greater than that of other investigators.

By holding that absolute immunity does not shield Dr. West, we do not imply any opinion on the strength of his qualified immunity defense or the ultimate validity of Keko's conspiracy allegations.[9]

## CONCLUSION

For the foregoing reasons, we conclude that the summary judgment in favor of Sheriffs Hingle and Wooten, Officers Bowles, Charles Guey, and English, and Investigator Sadie Guey must be affirmed. Dr. West's appeal of the district court's denial of absolute immunity must be dismissed.

**AFFIRMED in Part, DISMISSED in Part.**

---

[9]Dr. West also raises on appeal the district court's denial of summary judgment on Keko's federal and state law malicious prosecution claims. Since this ruling is not germane to his absolute immunity claim, and since Dr. West did not appeal the court's denial of qualified immunity, we lack jurisdiction over this issue.