# In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-2033

RALPHAEL OKORO,

*Plaintiff-Appellant,*

v.

WILLIAM CALLAGHAN, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 94 C 6343—**Matthew F. Kennelly**, *Judge.*

SUBMITTED NOVEMBER 13, 2002—DECIDED MARCH 25, 2003

Before FLAUM, *Chief Judge*, and POSNER and KANNE, *Circuit Judges.*

POSNER, *Circuit Judge.* This is a suit by a federal prisoner, Ralphael Okoro, against federal and state officers, seeking the return of gems and cash that he claims the defendants seized in the course of a search of his home. The district court dismissed the suit, but we reversed and remanded. *Okoro v. Bohman*, 164 F.3d 1059 (7th Cir. 1999). A bench trial was held, and the district judge rendered judgment for the defendants because he disbelieved Okoro's story. The appeal has no possible merit—the issue on which the judgment pivots was a straightforward issue of cred-

ibility—and we write only to respond to the defendants' argument that the district judge should never have allowed the case to go to trial, even after our remand.

Okoro had been arrested in his home by several of the defendants on suspicion of being a heroin dealer, and it was during a search incident to the arrest that the defendants are alleged to have stolen the gems and cash. The Supreme Court held in *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994), that a convicted criminal may not bring a civil suit questioning the validity of his conviction until he has gotten the conviction set aside. Okoro could be guilty of drug violations yet also have been the victim of a theft by the officers who arrested him. But we noted in our previous opinion that from the outset he has insisted that he was not trying to sell the officers heroin, as they testified; he was trying to sell them gems and they stole them. If this is true, then almost certainly he was convicted in error, for that testimony was an essential part of the evidence against him in the criminal case; and if he cannot prevail in his claim for the return of the gems without undermining the criminal case against him, then he is barred by *Heck* unless and until he knocks out his conviction, which he has never done. But as this point had not been raised by the defendants, we did not consider it an appropriate ground for affirming the judgment.

On remand, however, the defendants pleaded *Heck*. Without suggesting that they had done so too late (nor had they, for they were not obligated to defend the district court's judgment in their favor on every possible ground, *Schering Corp. v. Illinois Antibiotics Co.*, 89 F.3d 357, 358 (7th Cir. 1996); *Transamerica Ins. Co. v. South*, 125 F.3d 392, 399 (7th Cir. 1997); *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 740 (D.C. Cir. 1995) ("forcing appellees to put forth every conceivable alternative ground for af-

firmance might increase the complexity and scope of appeals more than it would streamline the progress of the litigation")), the court rejected it because of the theoretical possibility mentioned in our opinion that the defendants had both found illegal drugs in Okoro's home and stolen gems and cash that they also found there. This was error. Okoro adhered steadfastly to his position that there were no drugs, that he was framed; in so arguing he was making a collateral attack on his conviction, and *Heck* holds that he may not do that in a civil suit, other than a suit under the habeas corpus statute or its federal-defendant equivalent, 28 U.S.C. § 2255. It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit. *Edwards v. Balisok*, 520 U.S. 641, 646-48 (1997); *Ryan v. DuPage County Jury Commission*, 105 F.3d 329, 330-31 (7th Cir. 1996) (per curiam). He is the master of his ground. He could argue as we have suggested that the defendants had taken both drugs and gems, and then the fact that they had violated his civil rights in taking the gems (if they did take them) would cast no cloud over the conviction. Or he could simply argue that they took the gems and not say anything about the drugs, and then he wouldn't be actually challenging the validity of the guilty verdict. But since he is challenging the validity of the guilty verdict by denying that there were any drugs and arguing that he was framed, he is barred by *Heck*.

The government also objects to the judge's allowing Okoro's suit for the return of the gems and the cash to be converted to a suit for damages. Damages suits complaining about unconstitutional actions by federal law enforcement officers are governed by *Bivens* if the suit is against the officers and by the Federal Tort Claims Act if it is against the United States. Okoro's *Bivens* claims were dis-

missed (and he has not appealed that dismissal), and he has not exhausted administrative remedies, as the Tort Claims Act requires. But we do not interpret the proceedings on remand as a trial for damages. Okoro (if he were believed) did not know whether the defendants had the gems or whether they had sold them. His suit is best understood as seeking the return either of the gems or of the proceeds of their sale. Federal Rule of Criminal Procedure 41(g) (formerly, and at the time of our first opinion, 41(e)) entitles a person to the return of his property that has been unlawfully seized by a federal law enforcement officer. The position of this court is that a claim under Rule 41(g) may be brought after the defendant's conviction, as well as before, as an ancillary proceeding to the criminal case. *United States v. Solis*, 108 F.3d 722 (7th Cir. 1997); *United States v. Taylor*, 975 F.2d 402, 402-03 (7th Cir. 1992); *Mora v. United States*, 955 F.2d 156, 158 (2d Cir. 1992); *United States v. Garcia*, 65 F.3d 17, 20 (4th Cir. 1995); but see *Bartlett v. United States*, 317 F.2d 71 (9th Cir. 1963) (per curiam); *Toure v. United States*, 24 F.3d 444, 445 (2d Cir. 1994) (per curiam); *United States v. Rapp*, 539 F.2d 1156, 1160 (8th Cir. 1976).

Rule 41(g) creates a remedy analogous to the common law writ of replevin. And if the defendant in a suit for replevin has sold the property that the plaintiff is seeking to replevy, the plaintiff is entitled to the proceeds in an action for restitution. 1 Dan B. Dobbs, *Law of Remedies* § 5.18(1), p. 923 (2d ed. 1993). For generally the law does not distinguish between a claim to the ownership of a thing and a claim to the proceeds if the thing is sold or otherwise transferred, transmuted, or substituted for. E.g., *Mattson v. Commercial Credit Business Loans, Inc.*, 723 P.2d 996, 999 (Ore. 1986); UCC § 9-315(a); 1 Dan B. Dobbs, *Law of Remedies* § 4.3(2), pp. 588-89 (2d ed. 1993); 2 *id.* §§ 6.1(2), (3), pp. 5, 11. That is why a suit for proceeds is not a suit for

damages, unlike the case in which property is lost or destroyed and the owner seeks money to compensate him for his loss. He is seeking damages in that case, and a suit for damages is not authorized by Rule 41(g). *United States v. Hall*, 269 F.3d 940, 943 (8th Cir. 2001); *United States v. Potes Ramirez*, 260 F.3d 1310, 1316 (11th Cir. 2001); *United States v. Jones*, 225 F.3d 468, 469-70 (4th Cir. 2000); *United States v. Bein*, 214 F.3d 408, 415 (3d Cir. 2000); *Pena v. United States*, 157 F.3d 984, 986 (5th Cir. 1998). But if the government has sold the defendant's property and pocketed the proceeds, there is nothing in Rule 41(g) itself to prevent the court from ordering the government to remit the proceeds to the defendant, and cases such as *United States v. Minor*, 228 F.3d 352, 355 (4th Cir. 2000); *Mora v. United States, supra*, 955 F.2d at 159-60, and *United States v. Martinson*, 809 F.2d 1364, 1368-69 (9th Cir. 1987), though distinguishable, can be read to suggest that Rule 41(g) authorizes such relief. But it does not. A suit for restitution is subject to the defense of sovereign immunity when relief would require disbursement of money from the treasury, *United States v. Nordic Village, Inc.*, 503 U.S. 30, 38-39 (1992); *Edelman v. Jordan*, 415 U.S. 651, 663-69 (1974); *Kalodner v. Abraham*, 310 F.3d 767, 769-70 (D.C. Cir. 2002), even if the government is merely an escrow agent holding funds owned by the plaintiff. *Kalodner* was such a case. No one supposes that Rule 41(g) was intended to waive the sovereign immunity of the federal government. *United States v. Potes Ramirez, supra*, 260 F.3d at 1316; *United States v. Jones, supra*, 225 F.3d at 469-70; cf. *United States v. Nordic Village, Inc., supra*, 503 U.S. at 38-39.

But what if relief under Rule 41(g) is sought against individual officers rather than against the United States, because the government has disposed of the property to them (or maybe they never turned it over to the government)? Then the issue of sovereign immunity falls away

and the question becomes whether *Bivens* offers the exclusive route to a suit against the officers or whether Rule 41(g) is available since the relief sought is in the nature of restitution. Although *Bivens* is conventionally described as providing a *damages* remedy, e.g., *Sinclair v. Hawke*, 314 F.3d 934, 939 (8th Cir. 2003); *Yeager v. General Motors Corp.*, 265 F.3d 389, 398 (6th Cir. 2001), what it really does is create a right of action against individual federal officers for violation of constitutional rights; it does not truncate the remedies available. It would be odd to be able to proceed by way of *Bivens* if one sought damages yet be remitted to Rule 41(g) if one sought restitution.

Since in the usual case the only relief sought by the Rule 41(g) motion is return of the property *by the government*, the fact that the government doesn't have it is ordinarily a conclusive ground for denial of the motion. See, e.g., *United States v. Solis, supra*, 108 F.3d at 723; *United States v. White*, 718 F.2d 260, 261 (8th Cir. 1983) (per curiam). But an action for the return of property is necessarily directed against the custodian. If the federal government's agents have secreted or sold the property that they unlawfully seized while exercising investigative powers with which the government had clothed them, the owner of the property is entitled to seek the return of the property or its proceeds from them. Otherwise the government could defeat a motion under Rule 41(g) simply by transferring the property to one of its agents. It is no answer that if they hold it as the agents of the government and the government is ordered to return it, they must return it. Of course they must. *United States v. Wright*, 610 F.2d 930, 938-39 (D.C. Cir. 1979). The question is the procedure the owner should follow to get it back from them. One possibility would be to direct his Rule 41(g) motion to them. Yet the case would be squarely in the sights

of *Bivens* and there are obvious objections to multiplying remedies without compelling need.

We need not penetrate further into this thicket. The suit should have been dismissed on the basis of the *Heck* decision; and in any event the plaintiff's challenge to the district judge's credibility finding is doomed and independently requires that the judgment in favor of the defendants be

AFFIRMED.

A true Copy:

Teste:

_____

*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*