**Henry Thomas JENKINS, Plaintiff**

v.

**TOWN OF VARDAMAN, MISSISSIPPI and Terral Cooper, Defendants.**

**Civil Action No. 3:10CV75–MPM–SAA.**

United States District Court,
N.D. Mississippi,
Western Division.

Oct. 22, 2012.

Jim D. Waide, III, Rachel M. Pierce, Waide & Associates, PA, Tupelo, MS, for Plaintiff.

Gary E. Friedman, Mark D. Fijman, Phelps Dunbar LLP, Jackson, MS, for Defendants.

### ORDER

MICHAEL P. MILLS, Chief Judge.

This cause comes before the court on the motion of defendants Town of Vardaman, Mississippi and Terral Cooper for dismissal or alternatively for summary judgment. Plaintiff Henry Thomas Jenkins has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that the motion is well taken and due to be granted.

This is a § 1983 action in which plaintiff seeks to recover for alleged First Amendment and Fourth Amendment violations arising out of his September 5, 2009 arrest by Vardaman Police Officer Terral Cooper. On that day, plaintiff, who is white, drove his four-wheeler to a convenience store in Vardaman, Mississippi. The parties agree that under Mississippi law, it is illegal to drive a four-wheeler on public roads. The parties also agree that Officer Bryant, who is black, thereupon approached plaintiff and began writing him a ticket. At this point, the parties' factual versions of the case begin to differ, although defendants concede that, for the purposes of their motion to dismiss, this court is required to accept the factual allegations contained in the complaint as true.

In his brief, plaintiff describes his version of events as follows:

> Considered in the light most favorable to Plaintiff and taking the facts from the Complaint, Defendant officer approached Plaintiff, referring to him with racist names and giving him tickets for

having "no insurance" and "careless driving" of a four-wheeler. After Plaintiff told Defendant Cooper, "You must not like white people," Defendant Cooper gave Plaintiff tickets and accused Plaintiff of "snatching" the tickets out of his hand. As Plaintiff started to walk away, Defendant Cooper pulled his taser, but did not use it at that time. Defendant Cooper then followed Plaintiff into the convenience store where he pulled the taser, and without any apparent purpose, shot Plaintiff with it. According to Plaintiff, and though it is not shown on the video, Plaintiff alleges that Defendant Cooper shot him a second time. Plaintiff alleges that the "tasing of Plaintiff was a proximate result of Plaintiff's exercise of his free speech rights, by telling Cooper that, 'You must not like white people,' and accusing Cooper of 'acting crazy.'"

Plaintiff admits, however, that he subsequently plead guilty in Vardaman Municipal Court to resisting arrest, and this guilty plea has led defendants to seek dismissal of this action under *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). Officer Bryant has also filed a motion to dismiss the claims asserted against him individually under qualified immunity.[1]

Prior to addressing the various motions to dismiss, it must be acknowledged that the procedural and legal framework of this case is somewhat complex. In his complaint, plaintiff asserts Fourth Amendment excessive force and First Amendment retaliation claims against Officer Cooper individually, but he limits his claims against the Town of Vardaman to his First Amendment claims. In the latter claim, plaintiff contends that the Town of Vardaman should be liable for failing to train Officer Cooper not to arrest people based on "mere words."

This court's inclination is not to decide dispositive motions prior to discovery, but, as discussed below, it concludes that this case is an exception. Indeed, it is apparent that the *Heck* issues in this case may be resolved based on the complaint and the public court records relied upon by defendant, and, as discussed below, plaintiff has failed to demonstrate how additional discovery would assist him in responding to the qualified immunity defense raised by Officer Cooper. While plaintiff does argue that he should be entitled to more discovery, the affidavit from his attorney merely states that such discovery is needed "because plaintiff needs proof that defendant Cooper did not receive any training against arresting because of mere words used by a criminal defendant." It thus seems clear that plaintiff is requesting discovery regarding his First Amendment retaliation claim against the Town of Vardaman, and, as discussed below, the court will not be deciding the merits of that claim in this order.[2]

---

**1.** In seeking dismissal of all the claims in this case, defendants rely upon public records showing that plaintiff plead guilty to resisting arrest arising out of this incident, and they also rely upon video footage of part of the arrest, which video had been referenced in the complaint. Defendants argue that "matters of public record, orders, items appearing in the record of the case, and exhibits· attached to the complaint, ... may be taken into account" in deciding a motion to dismiss. *See* Charles Alan Wright and Arthur R. Miller, *Federal Practice and Procedure* § 1357, p. 299

(1990). Plaintiff has not questioned this authority, nor does he deny the authenticity of the evidence in question.

**2.** Rather, this court's conclusion discussed below is that, even assuming that plaintiff's First Amendment claim has potential merit, it is due to be dismissed without prejudice under *Heck*, until such time as plaintiff's underlying criminal conviction has been reversed, pardoned or otherwise expunged from his record.

The court does conclude, however, that two issues (which are cumulatively dispositive of this entire case) are appropriate for resolution at this juncture: 1) Officer Cooper's qualified immunity defense and 2) Officer Cooper and the Town of Vardaman's motion to dismiss under *Heck.* The court concludes that the discovery sought in the affidavit from plaintiff's attorney would not assist him in responding to either of these motions, and it will accordingly address them in turn.

### I. Is Officer Cooper entitled to dismissal of the Fourth Amendment excessive force claim against him with prejudice under the doctrine of qualified immunity?

 Officer Cooper has filed a motion to dismiss the Fourth Amendment excessive force claim against him on the basis of qualified immunity. The doctrine of qualified immunity shields a governmental official from civil liability for damages based upon the performance of discretionary functions if the official's acts did not violate clearly established constitutional or statutory law of which a reasonable person would have known. *Easter v. Powell,* 467 F.3d 459, 462 (5th Cir.2006). To determine whether a defendant is entitled to qualified immunity, this court engages in a two-pronged analysis, inquiring (1) whether the plaintiff has alleged a violation of a constitutional right and, if so, (2) whether the defendant's behavior was objectively reasonable under clearly established law at the time the conduct occurred. *Easter,* 467 F.3d at 462. If the plaintiff fails to state a constitutional claim or if the defendant's conduct was objectively reasonable under clearly established law, then the governmental official is entitled to qualified immunity. *Id.*

 In arguing that he did not violate clearly established constitutional law by tasing plaintiff, defendant relies upon video footage of much of the arrest, and he cites case law supporting the use of tasers in contexts similar to the one in this case:

> Despite the Complaint's assertion that Officer Cooper perfunctorily announced Plaintiff was under arrest and shot him with the Taser device, the video shows Plaintiff twice physically resisting Officer Cooper's attempts to place him under arrest, prior to Officer Cooper using the Taser device.... The right to make an arrest necessarily carries with it the right to use some degree of force or threat to effect it. *Graham v. Connor,* 490 U.S. 386, 396, 109 S.Ct. 1865 [104 L.Ed.2d 443] (1989). Moreover, in effectuating an arrest, a police officer "may exert such physical force as is necessary to effect the arrest by overcoming the resistance he encounters." *Wallace v. Harber,* 1993 WL 82379, *3 (5th Cir. March 19, 1993) (opinion attached); *Bryan v. McPherson,* 590 F.3d 767, 780 n. 15 (9th Cir.2009) (officers need not employ the "least intrusive degree of force possible.").

Officer Cooper's use of the Taser device was reasonable and appropriate and he was under no legal requirement to attempt a physical confrontation before using the Taser device. *See Draper v. Reynolds,* 369 F.3d 1270, 1278 (11th Cir. 2004) (use of Taser reasonable to avoid physical struggle in which officer or suspect could have been seriously hurt); *Slama v. City of Madera,* 2010 WL 2044662 (N.D.Ohio May 20, 2010) (qualified immunity appropriate where use of Taser prevented physical struggle) (opinion attached); *Colbert v. City of Toledo,* 2010 WL 596460, *3 (N.D.Ohio Feb. 16, 2010) (officer who tased suspect three times "was not required to take his chances at physically overpowering" plaintiff and was entitled to qualified immunity) (opinion attached). Because Officer Cooper's actions using the Taser

device on Plaintiff did not result in a constitutional violation, Officer Cooper is entitled to qualified immunity.

In response, plaintiff provides essentially no substantive rebuttal to defendant's Fourth Amendment arguments, instead choosing to highlight his First Amendment claim. The entirety of plaintiff's argument on the qualified immunity issue is as follows:

> The individual Defendant also claims "qualified immunity" contending that the law is not sufficiently clear that "a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton,* 483 U.S. 635, 107 S.Ct. 3034, 3039 [97 L.Ed.2d 523] (1987).

> However, Plaintiff's complaint alleges that Plaintiff was shot with the taser because Plaintiff made statements accusing Defendant Cooper of racism, which apparently offended him. A fact finder is entitled to determine that such attack infringed upon Plaintiff's free speech and constituted a use of unreasonable force. Certainly, it is settled law that the arbitrary imposition of force or an "unreasonable seizure" of a person's body is a violation of clearly-established rights. *Graham v. Connor,* 490 U.S. 386 [109 S.Ct. 1865, 104 L.Ed.2d 443] (1989); *Enlow v. Tishomingo County,* 45 F.3d 885 (5th Cir.1995).

> *Scott v. Harris,* 550 U.S. 372, 378 [127 S.Ct. 1769, 167 L.Ed.2d 686] (2007) is of no aid to Defendant. That case presented a video tape which proved that the plaintiff had been endangering the lives of those on the highway when he was pushed off the highway. In the case at bar, the video, objectively reviewed, indicates that Plaintiff was doing nothing wrong when he was shot with the taser gun. Moreover, no other authority indicates that qualified immunity is appropriate in this case.

Clearly, this is a very sparse response to a qualified immunity defense, and it is one which is insufficient as a matter of law.

■ It is well established that a § 1983 defendant who "pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion" thereby places the burden on the plaintiff to "rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith,* 117 F.3d 866, 871–72 (5th Cir.1997). It is thus apparent that it is the plaintiff, rather than the defendant, who must do most of the "heavy lifting" in the qualified immunity context, and the court finds that, in this case, plaintiff has made essentially no effort to rebut defendant's argument that he did not violate clearly established Fourth Amendment law in this case. Qualified immunity law does not presume that governmental workers were violating the Constitution in performing their duties, and it recognizes that merely being forced to defend against a lawsuit, in and of itself, is a significant burden on such a worker. Faced with defendant's authority suggesting that his use of force was objectively reasonable under Fourth Amendment jurisprudence, it was incumbent upon plaintiff to produce Fourth Amendment jurisprudence which establishes otherwise.

■ The U.S. Supreme Court has clarified that, except in certain "obvious" cases, authority which might serve to put a worker on notice that his conduct is unconstitutional is generally required to defeat a qualified immunity defense. *See Brosseau v. Haugen,* 543 U.S. 194, 125 S.Ct. 596, 599, 160 L.Ed.2d 583 (2004). In this case, plaintiff not only fails to submit his own authority dealing with the specific Fourth Amendment issue at hand, but he also improperly attempts to shift the objective Fourth Amendment analysis into an inqui-

ry into Officer Bryant's subjective motivations for his actions. This is the incorrect analysis as a matter of law.

 It is well established that excessive force claims are to be decided under the Fourth Amendment and that the standard is an objective one. *Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). As recently emphasized by the Fifth Circuit, an officer's subjective motivations in utilizing force are irrelevant in analyzing a Fourth Amendment claim. The relevant inquiry in the Fourth Amendment context is, instead, whether the amount of force used was objectively reasonable. The Fifth Circuit recently wrote in *Poole v. City of Shreveport*, 691 F.3d 624 (5th Cir.2012) that:

> Crucially, this analysis must be objective: To make out a Fourth Amendment violation, let alone one that violates clearly established law, "the question is whether the officer's actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397, 109 S.Ct. 1865. . . . Any "evil intentions" motivating an officer's objectively reasonable use of force "will not make a Fourth Amendment violation." *Id.* at 397, 109 S.Ct. 1865.

*Poole*, 691 F.3d at 628. Thus, plaintiff provides very little substantive response to defendant's qualified immunity motion, and the response which he does provide improperly frames the Fourth Amendment analysis as being a subjective inquiry into Officer Cooper's motivations for tasing him. Such a response is insufficient as a matter of law. The court therefore concludes that plaintiff's Fourth Amendment claim against Officer Cooper is barred by qualified immunity, and it will be dismissed with prejudice.

## II. Should plaintiff's First Amendment retaliation claims against Officer Cooper and the Town of Vardaman be dismissed without prejudice under *Heck?*

 As discussed above, in his response to Officer Cooper's qualified immunity motion, plaintiff emphasizes that he also asserts First Amendment retaliation claims against both Officer Bryant and the Town of Vardaman. In light of the dismissal of the Fourth Amendment claims against Officer Bryant, these are the sole remaining claims in this case. Defendant does not appear to assert a qualified immunity defense as to the First Amendment claim against him, choosing instead to seek dismissal of these claims without prejudice under *Heck v. Humphrey*, 512 U.S. 477, 486, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994). The *Heck* analysis is fundamentally different from the qualified immunity analysis, since it does not make an inquiry into the validity of the plaintiff's claims, but, rather, considers whether they are inconsistent with a prior criminal conviction. In *Heck*, the Supreme Court held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. . . ." *Heck* at 486–87, 114 S.Ct. 2364.

 The *Heck* rule was formulated in deference to the principle that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments." *Id.* at 486, 114 S.Ct. 2364. In *Heck*, the Supreme Court held

that where a § 1983 suit for damages would "necessarily imply" the invalidity of an inmate's conviction, or "necessarily imply" the invalidity of the length of any inmate's sentence, such a claim is not cognizable under § 1983 unless and until the inmate obtains favorable resolution of a challenge to his conviction. *Heck*, 512 U.S. at 487, 114 S.Ct. 2364. As a result, the district court must consider the relationship between the § 1983 claim and the conviction, including asking whether the plaintiff could prevail only by "negat[ing] an element of the offense of which he [was] convicted." *Id.* at 486 n. 6, 114 S.Ct. 2364. Only if a "judgment in favor of the plaintiff would necessarily imply the invalidity of the conviction or sentence" does the court go on to ask whether that conviction or sentence has in fact been invalidated. *Id.* at 487, 114 S.Ct. 2364.

Prior to analyzing the *Heck* issues in this case, the court initially notes that the basic scope and validity of plaintiff's First Amendment retaliation claim is in some doubt. In his complaint and briefing, plaintiff is vague about whether he regards his *arrest* and/or his *tasing* as being caused by his exercise of his free speech rights. At one point in his brief, for example, plaintiff writes that "[a]rresting plaintiff because he exercised his First Amendment rights by accusing the officer of racism would violate the First Amendment." As discussed below, the court finds this false arrest allegation to come closest to asserting a valid constitutional claim. Elsewhere in his briefing, however, plaintiff argues that the "tasing of plaintiff was a proximate result of plaintiff's exercise of his free speech rights," and it is apparent that, by so arguing, plaintiff is attempting to have his Fourth Amendment excessive force claim considered under in-

applicable First Amendment jurisprudence.

As discussed above, defendant has raised a qualified immunity defense as to plaintiff's Fourth Amendment claim, and plaintiff has effectively conceded that defense by not seriously attempting to establish that the amount of force used was objectively unreasonable under clearly established law. Having done so, plaintiff's Fourth Amendment excessive force claim is off the table, and the question is whether there is some separate cognizable First Amendment violation alleged in the complaint.

The court will, perhaps generously, read the allegations in plaintiff's complaint as being at least arguably consistent with potential recovery under the First Amendment. This court will so interpret the complaint in spite of the fact that plaintiff relies upon clearly distinguishable authority in support of his First Amendment claim. In his brief, plaintiff relies upon the Fifth Circuit's decision in *Enlow v. Tishomingo County, Miss.*, 45 F.3d 885 (5th Cir.1995) (*Enlow II* ),[3] which involved a plaintiff who was arrested for making public statements which incited a crowd to riot. *Enlow v. Tishomingo Cty.*, 962 F.2d 501, 506–07 (5th Cir.1992) (*Enlow I* ). The presence of a First Amendment issue was far more obvious in *Enlow* than in this case, given that the statements in that case involved comments made before a public audience, and the content of those statements were apparently of significant public concern. In this case, by contrast, plaintiff alleges that he was arrested because he told defendant that he "must not like white people," thereby effectively calling him a racist. As such, the facts of this case appear much closer to an insult delivered in a personal conversation between two

---

**3.** In his brief, plaintiff gives an inaccurate citation to *Enlow,* and the court will presume

that the above citation is the one which was intended.

individuals, and the First Amendment implications of this exchange are far less clear than in *Enlow*.

This court was initially inclined to conclude that a private insult between an arrestee and officer would be insufficient to give rise to a First Amendment claim, but further research revealed some authority which at least arguably suggests otherwise. In *City of Houston, Texas v. Hill*, 482 U.S. 451, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987), for example, the U.S. Supreme Court stated that a significant amount of verbal criticism directed at a police officer is protected under the First Amendment. In so stating, the court noted that: "The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state." *Id.* at 463, 107 S.Ct. 2502. Fifth Circuit authority also arguably suggests that an arrest made on the basis of such criticism may be the basis of a First Amendment retaliation claim. *Starling v. Fuller*, 74 F.3d 1236 (5th Cir. 1995).

At this juncture, the court will assume, for the sake of argument, that plaintiff might potentially assert a First Amendment claim in this case based upon his *arrest*, assuming that he is able to get past *Heck*'s bar. Once again, however, the *amount of force* used against plaintiff in effecting that arrest is a completely separate Fourth Amendment issue which has already been dealt with in the court's qualified immunity ruling. It may be true that there are other contexts in which the use of force by a police officer could validly be considered in the context of a First Amendment retaliation claim. In this case, however, it is clear from both the complaint and from plaintiff's guilty plea to resisting arrest that Officer Bryant used his taser to subdue plaintiff in the course of making an arrest. Indeed, plaintiff's

complaint specifically alleges that Officer Bryant "told plaintiff he was under arrest, pulled the taser and shot plaintiff with it." An allegation that excessive force was used in the course of making an arrest is clearly a Fourth Amendment, not a First Amendment, matter. Plaintiff appears to be using First Amendment arguments to obscure the fact that he has no Fourth Amendment authority to defeat Officer Cooper's qualified immunity defense, but this is improper. The court will therefore disregard plaintiff's arguments which seek to conflate these two issues, and it will interpret his claim as being that Officer Bryant arrested him because of his statement that he "must not like white people," separate and distinct from the issue of the amount of force which was used.

Even assuming that the complaint, so interpreted, might be regarded as stating a valid First Amendment claim, it seems clear that this claim is due to be dismissed without prejudice under *Heck*. Indeed, by pleading guilty to resisting arrest under § 97–9–73, plaintiff admitted to having resisted a "lawful arrest." Importantly, Mississippi law requires the State to prove the existence of a lawful arrest as part of its burden of proof under § 97–9–73. Indeed, in *Chambers v. State*, 973 So.2d 266, 271 (Miss.App.2007), the Mississippi Court of Appeals wrote that:

> To prove that Chambers resisted arrest on the night in question, the State was required to prove that (1) Officer Bagley was attempting a lawful arrest, and (2) Chambers resisted or obstructed his arrest by force, threats, violence, or any other means. *See* Miss.Code Ann. § 97–9–73 (Rev.2006).... "The offense of resisting arrest presupposes a lawful arrest. A person has a right to use reasonable force to resist an unlawful arrest." *Brendle v. City of Houston*, 759 So.2d 1274, 1284 (Miss.App.2000) (*quot-*

*ing Taylor v. State*, 396 So.2d 39, 42 (Miss.1981)).

The court sees no argument that an arrest made because plaintiff told defendant that he "must not like white people" would be a lawful one. Thus, if plaintiff felt that this, or some other unlawful reason, was what actually motivated his arrest, then he had every right under Mississippi law to assert this defense to the criminal charge against him. Plaintiff instead chose to plead guilty to the charge.[4]

Guilty pleas have consequences, and this court reads Fifth Circuit authority as holding that one such consequence is that the convict may not thereupon turn around and seek to profit in a civil lawsuit which is based upon allegations which are in fundamental conflict with his guilty plea. The court finds that plaintiff's First Amendment retaliation claim is in fundamental conflict with his guilty plea and that, if he were to prevail on that claim in this court, it would necessarily imply the invalidity of his criminal conviction under *Heck*. In particular, the court concludes that plaintiff could prevail on his First Amendment retaliation claim only by "negat[ing] an element of the offense of which he [was] convicted," *id.* at 486 n. 6, 114 S.Ct. 2364, namely that he was lawfully arrested in this case. The court therefore concludes that plaintiff's First Amendment retaliation claims, against both Officer Cooper and the Town of Vardaman, are due to be dismissed without prejudice under *Heck*.

**III. Assuming *arguendo* that this court erred in dismissing plaintiff's Fourth Amendment excessive force claim against Officer Cooper based on qualified immunity, would *Heck* still dictate dismissal of that claim without prejudice?**

 Officer Cooper has also sought dismissal without prejudice of plaintiff's Fourth Amendment excessive force claim against him under *Heck*. As discussed previously, this court has already concluded that this claim is due to be dismissed *with* prejudice under qualified immunity law. It is therefore seemingly unnecessary to discuss the *Heck* issues in this context, but the court will nevertheless do so, based on the possibility that the Fifth Circuit will disagree with its analysis on the qualified immunity issue.[5]

The applicability of *Heck* to excessive force claims has often been a controversial issue, with a number of circuits concluding that the decision is inapplicable to such claims. For example, in *Thore v. Howe*, 466 F.3d 173, 175 (1st Cir.2006), the Third Circuit held that:

A § 1983 excessive force claim brought against a police officer that arises out of the officer's use of force during an arrest does not necessarily call into question the validity of an underlying state conviction and so is not barred by *Heck*. *See, e.g., Van Gilder v. Baker*, 435 F.3d 689, 692 (7th Cir.2006).

This court's reading of Fifth Circuit authority suggests that, in this circuit, the

---

4. Plaintiff also offers the possibility that he may have been arrested because he snatched a ticket from Officer Bryant's hand, but, if so, then that would clearly not be the valid subject of a First Amendment retaliation claim.

5. The *Heck* analysis is also relevant assuming that the complaint could somehow be read as asserting a Fourth Amendment claim against

the Town of Vardaman. The court concludes that the complaint (as well as the affidavit from plaintiff's attorney requesting discovery) only allege facts supporting a First Amendment claim against the Town, but, assuming that this is in error, then *Heck* would still support a dismissal without prejudice of any Fourth Amendment claim against it.

answer to the question of whether *Heck* bars Fourth Amendment excessive force claims is: "it depends." There seems to be universal agreement, for example, that a plaintiff who concedes that he resisted arrest but nevertheless contends that excessive force was used against him would not find his Fourth Amendment claim barred by *Heck.* In such a case, the plaintiff would not be challenging the foundation of his prior conviction, and the *Heck* analysis would simply not apply. In this case, however, the allegations of plaintiff's § 1983 claims are in fundamental conflict with his prior criminal conviction, and, as such, Fifth Circuit precedent suggests that those claims are barred by *Heck.*

Factually speaking, the closest Fifth Circuit case to this one appears to be the Fifth Circuit's 2004 decision in *Arnold v. Town of Slaughter,* 100 Fed.Appx. 321 (5th Cir.2004). In *Arnold,* the Fifth Circuit considered a case where, as here, a plaintiff who had been convicted of resisting an officer subsequently brought a Fourth Amendment excessive force claim against him. In considering the applicability of *Heck* in this context, the Fifth Circuit in *Arnold* noted that courts had often disagreed on this issue:

> How *Heck* applies to excessive force claims is not always clear. By proving an excessive force claim, a plaintiff will not invariably invalidate his conviction. See *Hudson v. Hughes,* 98 F.3d 868, 873 (5th Cir.1996). Other circuits have emphasized the conceptual difference between an excessive force claim and a challenge to a conviction. Both the Ninth and Third Circuits have indicated that an excessive force claim would not necessarily challenge a plaintiff's conviction for assault during a stop. *Nelson v. Jashurek,* 109 F.3d 142, 145–46 (3d Cir. 1997); *Smithart v. Towery,* 79 F.3d 951, 952 (9th Cir.1996). While recognizing this distinction, this circuit has recognized that certain convictions will pre-

vent a plaintiff from bringing an excessive force claim.

*Arnold,* 100 Fed.Appx. at 323.

Ultimately, the Fifth Circuit in *Arnold* concluded that whether *Heck* bars excessive force claims on the basis of a prior conviction for resisting arrest depends on whether the *allegations* in the subsequent civil case are consistent with the prior criminal conviction. In *Arnold,* the Court noted that the plaintiff's allegations were not consistent with his prior conviction for resisting arrest, writing that:

> Arnold's claims are not that the police used excessive force after he stopped resisting arrest or even that the officers used excessive and unreasonable force to stop his resistance. Instead, Arnold claims that he did nothing wrong, but was viciously attacked for no reason. He provides no alternative pleading or theory of recovery. In this way, Arnold's claims are distinguishable from excessive force claims that survive *Heck*'s bar.

*Id.* at 324. The Fifth Circuit thus concluded that, since the plaintiff in *Arnold* was proceeding under Fourth Amendment claims whose allegations were inconsistent with his prior criminal conviction, *Heck* served to bar those claims.

The Fifth Circuit's approach in *Arnold* is consistent with that followed by Judge Posner of the Seventh Circuit in *Okoro v. Callaghan,* 324 F.3d 488 (7th Cir.2003). In *Okoro,* Judge Posner wrote that a district court had erred in concluding that *Heck* did not apply based upon the "theoretical possibility" that the facts could somehow be read as reconciling the criminal conviction and civil lawsuit. In so concluding, Judge Posner emphasized that the plaintiff was the "master of his ground" and that, as such, the burden should be on him to assert claims which are consistent with his prior conviction. *Okoro,* 324 F.3d

at 490. In so concluding, Judge Posner wrote that:

It is irrelevant that he disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit.

*Id.*

*Arnold* and *Okoro* represent a more robust application of *Heck* preclusion which looks to whether the *allegations* in the complaint (and not merely a civil judgment in the plaintiff's favor) are "inconsistent with the conviction's having been valid." These decisions are based upon the principle that a § 1983 plaintiff who has not seen fit to have a prior conviction reversed or otherwise expunged should not be able to turn around and make allegations in a civil lawsuit which are inconsistent with his prior conviction. The difference between the *Arnold/Okoro* approach and the more plaintiff-friendly approach followed by some circuits appears to be the extent to which courts are willing to give plaintiffs the "benefit of the doubt" regarding whether the prior guilty plea and subsequent lawsuit may be harmonized with each other.

In this case, plaintiff argues that his guilty plea under § 97–9–73 and his allegations in this case can be read in harmony with each other, but he places upon the jury, rather than himself, the burden of finding some consistency between his prior conviction and his current lawsuit. In so doing, plaintiff clearly invites speculation from the jury in this regard, writing that:

First, there is no record for determining exactly what plaintiff did to warrant a "resisting arrest" conviction. Perhaps "resisting arrest" refers to the fact that plaintiff "snatched" the tickets away from defendant Cooper. If so, a jury may find that the "resisting arrest" was for an incident entirely separate from the incident where plaintiff was tased. There is absolutely nothing inconsistent with finding plaintiff guilty of resisting arrest because he "snatched" the tickets, then finding that unreasonable force was used against plaintiff because he was arbitrarily tased when he had done nothing wrong.

The court finds this argument unpersuasive.

In his complaint and even in his briefing, plaintiff does not admit or concede to having engaged in conduct which would validly constitute "resisting arrest" under Mississippi law. Plaintiff does admit to having snatched the ticket from the arresting officer in anger and to having told him that he "must not like white people," but it is clear that neither of these actions would constitute resisting arrest under the facts of this case. Indeed, it seems clear that an officer who is merely writing a traffic ticket is not even *attempting* an arrest, quite apart from the issue of whether the plaintiff's actions would constitute resistance to an actual arrest. As such, the facts of this case are analogous to those in *Arnold*, where the plaintiff simply suggested that he did nothing wrong, even though his criminal conviction indicated otherwise. Fifth Circuit law suggests that, in choosing to seek civil recovery in spite of his prior conviction, plaintiff should have seen fit to make allegations in this lawsuit which were consistent with his prior conviction. Plaintiff has failed to do so. This court accordingly concludes that the plaintiff's Fourth Amendment claims in this case would still be due to be dismissed without prejudice under *Heck*, even if the court erred in concluding that they should be dismissed with prejudice based on qualified immunity.

### CONCLUSION

In light of the foregoing, the court concludes that plaintiff's Fourth Amendment

538

claim against Officer Cooper is due to be dismissed with prejudice based upon qualified immunity (or alternatively without prejudice under *Heck*) and that his First Amendment claims against Officer Cooper and the Town of Vardaman are due to be dismissed without prejudice under *Heck*.

A separate judgment will be issued this date, pursuant to Fed.R.Civ.P. 58.

### *JUDGMENT*

For the reasons given in the court's order issued this date, it is hereby ordered and adjudged that plaintiff's Fourth Amendment claim against defendant Cooper is dismissed with prejudice under qualified immunity and that his First Amendment claims against Cooper and the Town of Vardaman are dismissed without prejudice under *Heck v. Humphrey*.

There being no remaining claims, this case is dismissed.

SO ORDERED.