In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-2709

WALTER D. HILL,

*Plaintiff-Appellant,*

*v.*

JOSEPH R. MURPHY, Special Agent, individually, *et al.,*

*Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 11 C 172 — **Michael J. Reagan**, *Chief Judge.*

SUBMITTED MARCH 12, 2015 — DECIDED MAY 4, 2015

Before POSNER, EASTERBROOK, and TINDER, *Circuit Judges.*

POSNER, *Circuit Judge.* In *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), the Supreme Court held (so far as relates to this case) that a person who has been convicted of a crime cannot seek damages or other relief under federal law (as in a suit under 42 U.S.C. § 1983 or *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)) for violation of his rights by officers who participated in the investigation or prosecution of the criminal charge, if "a judg-

ment in favor of the plaintiff [in the civil suit] would necessarily imply the invalidity of his conviction or sentence." The district judge held that a judgment in Hill's favor would, and so dismissed Hill's suit (a *Bivens* action), precipitating this appeal.

Hill had pleaded guilty in the criminal case to attempted extortion, in violation of 18 U.S.C. § 1951, and to making a false statement to federal investigators concerning his extortionate activities, in violation of 18 U.S.C. § 1001(a)(2). (He was the Deputy Liquor Commissioner of East St. Louis, Illinois, and was alleged to have extorted bribes from liquor licensees.) He was sentenced to 60 months in prison. We affirmed the judgment in *United States v. Hill*, 645 F.3d 900 (7th Cir. 2011).

The two defendants in this civil suit, an FBI agent and an IRS agent, had interviewed the plaintiff at his home before he was indicted and had gotten him to make damaging admissions. In this civil suit for damages he claims that the defendants forced their way into his house with drawn weapons, searched the house, seized and kept his lawfully owned handgun, and twirled a loaded gun in "John Wayne" fashion, making Hill "so scared" that he was "in tears." He felt "like a hopeless prisoner" in his own home when he tried to answer his phone and was "placed at gunpoi[n]t." While being questioned he felt disoriented, was crying from the pain in his head, and blacked out, but the agents did not call for medical assistance—he later learned that he had suffered a stroke. He was "under the gun, literally," he says, and "felt pressured and under duress" to answer the defendants' questions. We accept these allegations as true for purposes of this appeal.

He argues that by detaining him against his will, searching his home, and seizing his gun, all without his consent, plus using excessive force, ignoring his medical needs, and coercing him to answer their questions, the defendants violated his Fourth Amendment right to be free from an unreasonable search and seizure and his Fifth Amendment right to due process of law.

His specific Fourth Amendment claims are illegal entry, unlawful detention, unlawful seizure of a gun of which he was the lawful owner, deliberate indifference to his medical needs, and use of excessive force. These claims were properly brought under the Fourth Amendment because the injuries complained of were inflicted before there had been a judicial determination of probable cause. *Currie v. Chhabra*, 728 F.3d 626, 629--30 (7th Cir. 2013); *Lopez v. City of Chicago*, 464 F.3d 711, 719 (7th Cir. 2006).

His Fifth Amendment claim concerns three statements that he made to the officers—statements that he alleges were extracted from him by the tactics of intimidation described above. The statements are his denial to the officers that he had sent a bagman to collect bribes for him (this lie was the basis of the false-statement charge against him); his admission minutes later that the denial was indeed a lie; and his acknowledging that the mayor, who doubled as the Liquor Commissioner of East St. Louis (the plaintiff was as we noted the Deputy Liquor Commissioner), had failed to exercise proper supervision over him, a failure that facilitated his bribe taking.

The Fourth Amendment claims that we have listed are not barred by the principle of *Heck v. Humphrey* (such claims rarely are, see *Wallace v. City of Chicago*, 440 F.3d 421, 426–28

(7th Cir. 2006), affirmed under the name *Wallace v. Kato,* 549 U.S. 384 (2007); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006); *Covey v. Assessor of Ohio County*, 777 F.3d 186, 197 (4th Cir. 2015); *Hooper v. County of San Diego*, 629 F.3d 1127, 1133–34 (9th Cir. 2011); *Hughes v. Lott*, 350 F.3d 1157, 1160–61 (11th Cir. 2003)). If the police roughed up Hill, seized his gun without justification, waved a loaded gun in his face, and so on, these outrages, constituting violations of his Fourth Amendment right not to be subjected to an unreasonable search and seizure, would entitle him to damages for physical and psychological injury resulting from the search and seizure and for the expropriation of his gun. That would be true even if he'd never been prosecuted. But such violations of his rights would not exonerate him from the false statement and attempted-extortion charges that were the only grounds of his convictions.

One of Hill's due process claims, in contrast, challenges his false-statement conviction head on. That is the claim that he was coerced to answer the officers' question whether he used a bagman. Coerced to speak, he lied, and the lie was the basis of his conviction for making a false statement to the officers. The point was not that he was coerced to lie; doubtless the officers would have preferred a truthful answer, which would have nailed down his guilt of extortion but left no room for his also being convicted of making a false statement to the government. But had he not been coerced to speak, and as a result had remained silent, or (perhaps in response to noncoercive questioning, told the truth), he could not have been convicted of making a false statement. Therefore proof in this civil case that the conviction was based on a violation of his constitutional rights would be inconsistent with the conviction and so is barred by *Heck*.

This sounds not like a due process claim, but rather like a self-incrimination claim. Hill was forced to speak, and in speaking he incriminated himself by making a false statement. He doesn't mention self-incrimination, but since we are vacating much of the judgment and remanding, he may on remand decide to add a self-incrimination claim and the judge might let him do so. Furthermore, as we'll note at the end of this opinion, he might argue that his false statement was the product of the excessive-force violation of the Fourth Amendment that he alleges. In an effort to stave off a further appeal, we shall consider whether such an addition to the plaintiff's suit would be barred by *Heck v. Humphrey*.

A Fourth Amendment claim based on violence or threats used to extract the statement (conduct that violates the Fourth Amendment "right of the people to be secure in their persons … against unreasonable searches and seizures")—a claim unrelated to the truth or falsity of the statement—is very different from a Fifth Amendment self-incrimination claim based on the use of the statement to convict him of making a false statement. The first claim, a Fourth Amendment excessive-force claim that the plaintiff could press in this civil case even if his lie about the bagman had not been used in the criminal case, is unproblematic; a self-incrimination claim, in contrast, would be deeply problematic, as we're about to see.

But the fact that Hill admitted the lie—the admission being his second statement—along with the further fact that he admitted that the mayor hadn't supervised him effectively (the third statement), were not grounds for the false-statement charge: neither telling the truth nor committing extortion is making a false statement. The lie was the false-

statement crime of which he was convicted; the admission was merely evidence of the lie, and as explained in *Heck* "a suit for damages attributable to an allegedly unreasonable search may [be maintained] even if the challenged search produced evidence that was introduced in a state criminal trial that resulted in the plaintiff's still-outstanding conviction. Because of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Heck v. Humphrey, supra*, 512 U.S. at 487 n. 7 (emphasis in original and citations omitted); see also *Apampa v. Layng,* 157 F.3d 1103, 1105 (7th Cir. 1998).

These observations are pertinent because we know from the presentence report that the government had ample evidence, even without Hill's confession, to prove that he had lied—it had video and audio surveillance of his bagman collecting payments on his behalf. The use against Hill of his admission of having lied (the use consisting of including the statement in the stipulation of facts as a factual basis for the plea—had Hill's statements never been "used" against him he wouldn't have a Fifth Amendment claim, *Chavez v. Martinez*, 538 U.S. 760, 767 (2003)) was thus a harmless error.

The same is true of Hill's statement about the absence of mayoral oversight, which earned him an increase in his sentence for being a "public official in a high-level decision-making or sensitive position." U.S.S.G. § 2C1.1(b)(3). The absence of oversight amounted to a *de facto* delegation of mayoral authority to him; his statement that "the [m]ayor does not really know what he is doing in reference to liquor licenses" revealed that Hill occupied a high-level decision-

making position. Other evidence pointed in the same direction. Hill and the mayor had been friends since college; Hill stood in for the mayor at public events; and the mayor had created the position of Deputy Liquor Commission just for Hill. *United States v. Hill, supra*, 645 F.3d at 907. The presentence report, moreover, reveals that local business owners provided statements to the government about the extent of Hill's authority. One of the statements was that the mayor had "referred [the business owner in question] to Hill, whom [the mayor] identified as the individual who could renew [the business owner's] liquor license."

So even if the second and third statements were coerced, Hill's false-statement and attempted-extortion convictions and sentences would not be undermined. In contrast, his response to the question whether he had sent a bagman to collect bribes from liquor licensees was not only a ground but *the* ground of his conviction for making a false statement. As we noted earlier, had he remained silent—made no statement—he could not have been convicted of making a false statement. That makes this case like *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), in which, as we explained in *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006), "specific factual allegations in the complaint [in this case, that Hill was forced to speak, and in speaking lied] are necessarily inconsistent with the validity of the conviction."

Now one might be inclined to think that a lie is a lie; if the officers had asked Hill politely whether he used a bagman, he would have lied and been convicted; how then could the use of force have affected the outcome of his criminal trial? But we can have no idea what he would have said had they asked him politely. He might have told the truth,

but instead he might have lied in terror—he might have feared that if he admitted using a bagman, the officers, convinced now of his guilt, would *really* have beaten him up. Had they asked him politely he might have 'fessed up to his use of a bagman, as indeed he did shortly afterward.

We can make this point a little clearer by reference to the venerable distinction between "actus reus" and "mens rea." The former is the guilty act, the latter the guilty mind that decided to do the guilty act. An act, Holmes explained, "is always a voluntary muscular contraction, and nothing else." O. W. Holmes, Jr., *The Common Law* 91 (1881). In this case the voluntary muscular contraction was Hill's mouthing a denial that he used a bagman. But was there a guilty mind? If terror caused him to lie, the lie was not willful, which would distinguish this case from such cases as *Bryson v. United States*, 396 U.S. 64, 69--70 (1969), where we read that "the jury's verdict reflects a determination that petitioner's false statement was knowingly and willfully made. This negates any claim that petitioner did not know the falsity of his statement at the time it was made, or that it was the product of an accident, honest inadvertence, or duress"; see also *United States v. Knox*, 396 U.S. 77, 83--84 (1969); *Kay v. United States*, 303 U.S. 1 (1938); *United States v. Kapp*, 302 U.S. 214 (1937). If the lie was intentional rather than a mere terror reflex, there would be a guilty mind but a defense of duress, see *Dixon v. United States*, 548 U.S. 1, 6–7 (2006), so the consequence—a challenge in the civil proceeding to the correctness of his conviction of making a false statement—would be the same. If the agents were torturing him to speak and Hill thought they'd brutalize him further if he implicated himself, lying would have been his only recourse to avoid further brutalization.

Against concluding that basing a civil suit on coercion to speak is barred by *Heck* it can be argued that Hill's guilty plea was the entire basis for the false-statement conviction, as in *Lockett v. Ericson*, 656 F.3d 892, 896–97 (9th Cir. 2011), that the plea was voluntary even if the lie may not have been, that the civil suit does not challenge the plea, and that anyway a conviction based on a guilty plea can rarely be collaterally attacked. *United States v. Broce*, 488 U.S. 563, 574 (1989); *Connors v. Graves*, 538 F.3d 373, 378 (5th Cir. 2008). Although rarely is not never—see *United States v. Broce*, *supra*, 488 U.S. at 574–76, citing *Menna v. New York,* 423 U.S. 61 (1975), and *Blackledge v. Perry*, 417 U.S. 21 (1974)—the exceptions authorized by those cases are not applicable to this case.

But the Supreme Court in *Heck* was concerned not only with limiting collateral attacks on criminal judgments, but also with the unseemliness of conflicting judicial outcomes, see 512 U.S. at 484–85, as when "a judgment in favor of the plaintiff [in his civil suit] would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to proceed." *Id*. at 487 (emphasis in original).

"Imply" is not synonymous with "invalidate." A judgment in favor of Hill's claim in this civil suit that his conviction of making a false statement was unconstitutional because it rested on police coercion would not invalidate the

conviction, or provide a ground for a suit for postconviction relief (release from prison), but it would cast a shadow over the conviction. It would allow Hill to argue that he had been determined by a court to have been unjustly convicted and sentenced but was forbidden to obtain relief on the basis of that finding. It would thus enable him to indict the legal culture. This *Heck* forbids. As we put it in *Dominguez v. Hendley*, 545 F.3d 585, 588 (7th Cir. 2008), "a § 1983 claim for a due process violation based on the denial of a fair criminal trial may be brought only after the conviction is set aside. Otherwise, that civil claim would imply the invalidity of the outstanding conviction and would thus constitute a collateral attack on the conviction through an impermissible route." It would not be a collateral attack in the literal sense, because a judgment in favor of the plaintiff would not invalidate his conviction. But the implication of invalidity would be enough to establish the impropriety of the civil suit. Hill thus can't be permitted in his civil suit to prove that his first statement was coerced, though he can complain about the beating or threats or other brutalities that induced the three statements to the extent the brutalities inflicted injuries (whether physical or mental) for which tort damages can be awarded.

All that matters, in short, is that Hill be forbidden to assert on remand that the statement on which his conviction of making a false statement to the government was predicated was coerced, for if it was coerced then an element of his conviction would be negated. See *id*. at 589. (There are even hints in his complaint, which Hill might try to amplify on remand, that he made no false statement to the officers, coerced or otherwise—that their report of the interview is an attempt, that worked, to frame him for a false-statement

crime that he did not commit. To allow him to present that argument in this civil case would be an even clearer violation of *Heck*.)

We are not suggesting that there is a privilege to lie in response to an improper interrogation. "[I]t cannot be thought that as a general principle of our law a citizen has a privilege to answer fraudulently a question that the Government should not have asked. Our legal system provides methods for challenging the Government's right to ask questions—lying is not one of them. A citizen may decline to answer the question, or answer it honestly, but he cannot with impunity knowingly and willfully answer with a falsehood." *Bryson v. United States*, *supra*, 396 U.S. at 72; see also *United States v. Mandujano*, 425 U.S. 564, 583–84 (1976); and the *Knox*, *Kay*, *and Kapp* cases cited earlier. We add that *Brogan v. United States*, 522 U.S. 398, 404–05 (1998), rejected a claim that the Fifth Amendment barred a false-statement conviction under 18 U.S.C. § 1001 (the ground of Hill's false-statement conviction as well) merely because "it places a 'cornered suspect' in the 'cruel trilemma' of admitting guilt, remaining silent, or falsely denying guilt."

But this is not a case in which the government "should not have asked" the critical question (the question whether Hill used a bagman). There would have been nothing wrong with the government's asking him that question. The wrong lay in beating or terrorizing him into answering. "The use of coerced confessions, whether true or false, is forbidden because the method used to extract them offends constitutional principles." *Lego v. Twomey*, 404 U.S. 477, 624 (1972); see also *Colorado v. Connelly*, 479 U.S. 157, 163 (1986); *Brown v. Missis-*

*sippi*, 297 U.S. 278, 286 (1936) ("the rack and torture chamber may not be substituted for the witness stand").

Had the officers, foregoing brutality, merely said to Hill "we want to ask you a question but of course you don't have to answer it," and he had lied, he would be guilty of making a false statement to the government. But as far as anyone can know, had they said *that*, he would not have answered the question at all—in other words, he would have said nothing—or he might even have answered it truthfully; but in either case he could not have been convicted of making a false statement. Were he allowed to prove this in this civil suit, he would be denying the validity of his conviction. And that *Heck* forbids.

For completeness we note that while we have characterized Hill's claims regarding the three statements as Fifth Amendment claims, they would fare the same as Fourth Amendment claims based on the defendants' alleged use of excessive force to extract an incriminating statement from him (his denial that he used a bagman). In *Evans v. Poskon*, 603 F.3d 362, 364 (7th Cir. 2010), in which the defendant was convicted of attempted murder and resisting arrest, we said that

> a fourth-amendment claim can coexist [that is, without violating the *Heck* principle] with a valid conviction. [Evans] contends three things: (1) that he did not resist being taken into custody; (2) that the police used excessive force to effect custody; and (3) that the police beat him severely even after reducing him to custody. (Evans says that his skull was fractured and his face mangled, leading to three surgeries and bone grafts. He also contends that his vision has been permanently impaired. These are not normal consequences of arrest.) Proposition (1) is incompatible with his

conviction; any proceedings based on this contention must be stayed or dismissed under *Wallace* [*v. Kato*] or *Heck*. But propositions (2) and (3) are entirely consistent with a conviction for resisting arrest. See *Gilbert v. Cook*, 512 F.3d 899 (7th Cir. 2008); *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006); *Dyer v. Lee*, 488 F.3d 876, 881 (11th Cir. 2007) (collecting similar decisions in other circuits). These aspects of the suit can proceed.

Evans's first contention, like Hill's first, implicitly challenged his conviction; his second and third contentions, like Hill's second and third contentions, did not—Evans's because there was no inconsistency between his second and third contentions and the conviction, Hill's because his convictions rested comfortably on evidence unrelated to his second and third contentions.

*Wallace v. City of Chicago*, *supra*, which emphasizes that most Fourth Amendment claims survive *Heck*, thus coexists with *Evans v. Poskon*, *supra*, which points out that a few do not. We remarked that coexistence in *Parish v. City of Elkhart*, 614 F.3d 677, 681–82 (7th Cir. 2010); see also *Walden v. City of Chicago*, 755 F. Supp. 2d 942, 954–55 (N.D. Ill. 2010).

In summary, the only one of Hill's claims that is barred by *Heck v. Humphrey* from being asserted in this civil case is his claim that his false statement to the officers was coerced. The district court's judgment (which dismissed the entire suit) is therefore affirmed in part and reversed and remanded in part.

EASTERBROOK, *Circuit Judge*, concurring. I agree with my colleagues' conclusion that Hill can proceed with his claims under the Fourth Amendment. This enables him to recover damages for any improper entry, force, or threats the agents employed. It also makes it unnecessary for us to discuss his Fifth Amendment theories. If he were seeking compensation for his incarceration, then we would have a difference between the implications of the Fourth and Fifth Amendment theories. But I do not understand Hill's complaint, or his brief, to seek compensation for anything other than the rough treatment that he says he received at the agents' hands. A claim so limited is independent of what he said in response and can proceed under the rationale of *Wallace v. Kato*, 549 U.S. 384 (2007), without any problem under *Heck v. Humphrey*, 512 U.S. 477 (1994).

I do not join the portions of the majority opinion that see a potential *Heck* problem (as applied to one aspect of Hill's Fifth Amendment theory) in the fact that Hill lied in response to one question, then pleaded guilty to violating 18 U.S.C. §1001. My colleagues assert that a person who lies in response to implied threats of physical force lacks the mental state required for a conviction under §1001. Whether that is so is not an issue discussed in the parties' briefs, and I am not at all sure that it is so. A person who tells a material falsehood, knowing it to be false and knowing that his audience includes agents of the FBI or IRS, violates §1001; no other mental state need be shown. See *Brogan v. United States*, 522 U.S. 398 (1998) (holding that false exculpations violate §1001 and rejecting an invitation to add requirements or defenses in common-law fashion).

The law has ways to resist wrongful coercion to speak, but lying is not among them. "[O]ur cases have consistently—indeed without exception—allowed [criminal] sanctions for false statements or perjury; they have done so even in instances where the perjurer complained that the Government exceeded its constitutional powers in making the inquiry. See, *e.g.*, *United States v. Knox*, 396 U.S. 77 (1969); *Bryson v. United States*, 396 U.S. 64 (1969); *Dennis v. United States*, 384 U.S. 855 (1966); *Kay v. United States*, 303 U.S. 1 (1938); *United States v. Kapp*, 302 U.S. 214 (1937)." *United States v. Mandujano*, 425 U.S. 564, 577 (1976). My colleagues treat these cases as if they stand for no more than the proposition that one cannot defend against a perjury or §1001 prosecution by contending that the question should not have been asked. They say that, all right, but they say more too.

For example, the defendants in *Dennis* contended that they could not be convicted of lying, in affidavits denying any connection to the Communist Party, because a statute had made an unconstitutional threat: any labor official who failed to execute a non-Communist affidavit forfeited for himself and his entire union all benefits of federal labor law. Defendants did not contend that the government was forbidden to ask about their political affiliations; they contended, rather, that the government was forbidden to coerce them to answer, and that because the coercion violated the Constitution they were entitled to give false answers. The Court rejected that contention, as it has also rejected the contention that a witness wrongly threatened with imprisonment for remaining silent (a threat that violates the Self-Incrimination Clause) may respond to the threat by lying.

In *Knox* the Court sustained a conviction for violating §1001 by filing a false wagering-tax return, even though it had earlier held that the statute requiring such a return violated the Self-Incrimination Clause. That statute made silence a crime. People who had gambling income were coerced to speak on pain of imprisonment—and it was this wrongful coercion that Knox tried to raise as a defense to the charge of lying. But the Court had none of it and concluded that remaining silent and facing jail for that silence, or telling the truth, were the only allowed responses.

Maybe there is, or should be, a difference for the purpose of §1001 between coercion characterized by unconstitutional threats of imprisonment and unconstitutional threats of force. But my colleagues do not identify a case in which the Supreme Court has drawn that line, and as I've mentioned the parties have not briefed the subject. At page 7 the majority cites *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003), and *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006), for the proposition that a person who lies when forced to speak cannot be convicted of any crime (which if so would make Hill's contentions inconsistent with his conviction's validity), but neither decision deals with a person wrongfully induced to speak; the majority has added in brackets vital language that does not appear in *Okoro* or *McCann*. The issue I have flagged is open to full consideration in a case that presents it.

My colleagues also suggest (slip op. 8) that Hill would have had a duress defense. *Dixon v. United States*, 548 U.S. 1, 6–7 (2006), the sole cited authority, says no such thing; it acknowledges the existence of duress as a doctrine but does not consider when it blocks a conviction. *United States v. Bailey*, 444 U.S. 394 (1980), which my colleagues do not cite,

does address that question—for a "necessity" defense, to be sure, but duress and necessity are fraternal doctrines. *Bailey* holds that an accused cannot assert the defense if he had "a chance both to refuse to do the criminal act and to avoid the threatened harm." 444 U.S. at 410–11. Hill does not contend that he was mistreated to get him *to lie*; he maintains that he was mistreated to get him *to speak*. He could have avoided the threatened harm by telling the truth, so under *Bailey* he could not have prevailed on a defense of duress or necessity. (My colleagues' suggestion that Hill might have thought that he needed to lie is inconsistent with the fact that he fessed up immediately after lying; this scotches any contention— which Hill himself does not advance—that the interrogators compelled him to lie.)

Hill does not contend that he was under duress. The defendants likewise do not maintain that Hill's theories imply (or even *could* imply) that the §1001 conviction is invalid because he lacked the *mens rea* needed for conviction or was subject to duress. Instead they maintain that *Heck* bars the whole suit because an illegal entry (a violation of the Fourth Amendment) would have supported a motion to suppress evidence. The panel unanimously rejects that contention, which is inconsistent with *Wallace*. We should have stopped with that conclusion. There are good reasons why courts should confine themselves to issues raised and briefed by the parties; this case illustrates them. The majority's unguided journey through theories of criminal responsibility may make it unduly hard to enforce §1001, which isn't remotely what the Supreme Court set out to accomplish in *Heck*. I hope that the court will have an open mind when, in some future case, these subjects matter and the litigants join issue.